STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. OSCAR POTEET, DEFENDANT-APPELLANT.

Argued September 11, 1972—Decided October 24, 1972.

494 

Mr. *Edward J. Dimon,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Thomas E. Bracken,* Assistant Deputy Public Defender, on the brief; *Mr. Stanley C. Van Ness,* Public Defender, attorney).

Mr. *Francis J. Badach,* Assistant Prosecutor, argued the cause for respondent (*Mr. R. Benjamin Cohen,* Assistant Prosecutor, on the brief; *Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

WEINTRAUB, C. J. This is a post-conviction proceeding. Poteet and two others were convicted of the armed robbery of a bank. Poteet's conviction was affirmed by the Appellate Division in an unreported opinion, and we denied his petition for certification. 51 *N. J.* 572 (1968). Poteet instituted the present proceeding advancing claims which could have been raised on the direct appeal and which were foreclosed on that account. *State v. Trantino,* 60 *N. J.* 176, 180 (1972). Both the trial court and the Appellate Division, while recognizing the issues should have been advanced on the direct appeal, nonetheless accepted the issues and resolved them against Poteet. We granted certification, 60 *N. J.* 21 (1972), to consider whether the sentencing judge increased the sentence because Poteet defended against the charge and did not admit his guilt at sentencing. We are satisfied the trial court exacted no penalty on that account.

 The controlling principles are easily stated although not as easily applied. Surely punishment may not exceed what the man and his offense would warrant merely because he went to trial. A defendant has a right to defend, and although he is not privileged to commit perjury in that defense, the sentencing judge may not add a penalty because he believes the defendant lied. One reason is evident. A man may not be punished except upon a charge and opportunity for hearing. There having been no charge of

perjury or conviction for that crime, due process would be denied if further punishment were inflicted for that crime. Another reason, apart from this procedural obstacle, is that the right to defend would be unduly burdened if a defendant understood that, if convicted, his mere denial of the charge under oath would without more lead to successive convictions for perjury until he or the State was exhausted. We need not say whether a defendant may ever be indicted when he does no more than falsely deny his guilt at trial; we here refer to the values embarrassed by a perjury prosecution in order to stress the wrongfulness of including in a sentence something extra upon a belief that the defendant lied in asserting his innocence. Upon the proposition that no further penalty may thus be exacted, the cases agree. See *Scott v. United States,* 135 U. S. App. D. C. 377, 419 *F.* 2d 264 (1969) ; *Thomas v. United States,* 368 *F.* 2d 941 (5 Cir. 1966) ; *Miler v. United States,* 255 *A.* 2d 497 (D. C. Ct. App. 1969) ; *cf. Le Blanc v. United States,* 391 *F.* 2d 916 (1 Cir. 1968). Speaking of *Thomas v. United States, supra,* we said in *State v. De Stasio,* 49 *N. J.* 247, 259 (1967), *cert.* denied, 389 *U. S.* 830, 88 S. Ct. 96, 19 *L. Ed.* 2d 89 (1967) :

"The Court of Appeals properly said that a sentence may not be increased because a defendant defended against the charge or insisted upon his right of appeal."

██ There would be no great problem in applying this evident principle if the sentencing court were required only to put a price upon a given criminal event. But the larger demand is that the court take into account the man and his prospects for redemption. The aims of punishment are several, see *State v. Ivan,* 33 *N. J.* 197, 199–202 (1960); but the hope is constant that punishment, mild or severe, will reshape the offender. In assaying the prospects for rehabilitation, the court must look at the man as well as the offense, and it is here that a defendant's attitude toward the truth is not irrelevant.

██ Although, as we have said, it would be conceptually wrong to enlarge the crime for which a defendant is being punished by adding to it a finding of perjury, it is equally clear the sentencing judge may find in a plea of guilty some promise that the defendant can be rehabilitated by a lesser punishment than the circumstances might otherwise require. When that promise is found, it ought not to be disregarded because some hypothetical defendant, misunderstanding the sentencing process, might offer a false guilty plea or suspect the sentence imposed after trial was increased because the judge thought he lied. Surely that risk is insubstantial when the alternative would be a wooden approach barring consideration of the hope a judge may find in sincere contrition. As we said in *De Stasio, supra,* 49 *N. J.* at 260, "It would be grossly unfair to the many if all had to be sentenced without regard to their acknowledgment of guilt or their aid to the State in coping with crime, merely because a prospect of favorable treatment could induce someone to abandon his defense or his appeal."

██ But when the defendant has already been convicted, an admission of guilt is of doubtful value. We do not say the sentencing judge may not find otherwise in a given case, and of course we do not suggest that a willingness then to assist the State in bringing others to book may not be taken into account. Generally, however, a confession at that point is of little rehabilitative significance. In any event, the sentencing judge should not himself seek to induce a defendant to confess. The danger of misunderstanding and of unintended coercion is too great. It is for this reason that our administrative directive dated December 28, 1970 with respect to plea-bargaining provides that "the judge shall take no part in such discussions" (94 *N. J. L. J.* 1 (1971)). That danger is even more apparent when guilt has been established and the final disposition rests with the very officer who seeks the admission of guilt. A confession at that

juncture is worth too little to compensate for the risk that the defendant who does not yield will believe he was punished additionally because he did not.

Hence we would disapprove a practice of calling routinely upon defendants at sentencing to disavow their stance of innocence. But Poteet was not dealt with that way. The trial judge did not call upon Poteet to admit his guilt. Nor does the transcript suggest the judge would have deemed a confession from him to have any value in fixing his punishment. Poteet's criminal record was bad, and his guilt was clear.[1]

The transcript makes it plain that the trial court was concerned, not with Poteet, but with the codefendant, Borowski. It was Borowski's first adult offense. He was 21 years of age. Poteet had a long and serious criminal record. The trial judge thought that Borowski might be diverted from a career in crime if he could be freed of the influence of Poteet. Counsel had asked of the court "that you temper justice with mercy and to try to rehabilitate," and when Borowski said "I regret that I have to stand here and I'll probably regret this for the rest of my life," the trial court commented that "You don't regret anything because you don't even admit your guilt, do you?" The court added that it wanted to help Borowski but could not unless he severed his relations with Poteet. Under the court's interrogation, Borowski admitted his guilt, and named his codefendants as his fellow perpetrators. Thereupon the trial judge imposed sentence upon Borowski, saying it was considerably less than it would have been had Borowski not broken with Poteet.

Thus the trial court, believing Borowski could not be salvaged so long as he remained loyal to Poteet, succeeded in inducing Borowski to break with Poteet in open court,

---

[1]Poteet was found in the get-away car after it cracked up. He insisted he was a hitchhiker to whom the codefendants happened to give a ride. When thus apprehended, Poteet was wearing gloves—in July.

a step the trial court believed would offer hope for rehabilitation. The scene was extraordinary, and we do not recommend that it become a pattern. But Borowski does not complain. It is Poteet who complains, contending his sentence was increased because he did not admit his guilt. But, as we have said, the trial court did not ask Poteet to concede his guilt, and nothing in the transcript suggests that his sentence was enlarged because he did not confess.[2]

The judgment is affirmed.

JACOBS, J. (concurring) : In view of his offense and his background the defendant Poteet's sentence was entirely appropriate without regard to whether he admitted his guilt at sentencing; I therefore join in the affirmance. However, the record of the proceeding during which he and his co-defendant Borowski were sentenced evidenced such a disturbing approach that I hasten to disavow it. At the trial the defendants persisted in their claims of innocence but

---

[2]The concurring opinion of Mr. Justice Jacobs notes that the trial court said to Poteet that "Until you learn to come clean with me I don't have to give you any consideration and I've given you some, sir." If the quoted statement is read in context, it does not quarrel with the text of this opinion. After the sentencing of both men had been completed, Poteet asked whether his sentence would be consecutive to a three-year sentence imposed upon him in another county. The trial court acceded to Poteet's request that the sentences be concurrent. The trial court then urged Poteet to behave during his imprisonment. He added that "I'd like to do something for some of you fellows, but you fellows don't meet me halfway." The court then said there was hope for Borowski "but you don't want it." Poteet answered that "I want it," whereupon the trial court ridiculed Poteet's claim of innocence and uttered the sentence quoted by Mr. Justice Jacobs, "Until you learn to come clean with me I don't have to give you any consideration and I've given you some, sir." Fairly read, the colloquy does not suggest the trial court would have been impressed in the least by a confession by Poteet or that the punishment was increased because he did not confess. The quoted sentence was part of a lecture intended to encourage Poteet to reform by making him realize that he could not hope to fabricate his way out of future criminal involvements.

the jury disbelieved them and returned verdicts of guilty. When they appeared for sentencing each was entitled to judicious disposition in the particular light of his presentence report (*cf. State v. Kunz,* 55 *N. J.* 128 (1969)) without additional penalty or jeopardy to his right of appeal because of his denial of guilt. See *Miler v. United States,* 255 *A.* 2d 497 (*D. C. App.* 1969); *Scott v. United States,* 135 U. S. App. D. C. 377, 419 *F. 2d* 264 (1969); *Thomas v. United States,* 368 *F. 2d* 941 (5 *Cir.* 1966). As the court put it in *Miler:*

A trial judge may not penalize a defendant for not admitting guilt and expressing remorse once the jury has found him guilty. Such an admission might jeopardize his right of appeal or a motion for a new trial. Nor is it proper for the trial judge to impose a heavier sentence because he believes the defendant perjured himself in maintaining his innocence on the stand, or because he exercised his right of a jury trial. 255 *A.* 2d at 498.

When asked by the trial judge whether he had anything to say, the defendant Borowski acknowledged that he had been found guilty of a very serious offense; but he stated that he could still be a useful citizen, that he regretted that he had to stand there, and that he would probably regret it for the rest of his life. Thereupon the trial judge told Borowski that he did not believe that he regretted anything since he had not admitted his guilt. The trial judge followed this with six or seven rapid-fire inquiries to Borowski as to whether he admitted participation in the robbery and he received negative replies. Finally the trial judge enticingly told Borowski, "Poteet can't keep you out of jail, I can, if you tell me the truth"; only then was Borowski willing to say that he was guilty. There were further questions by the trial judge who, after receiving Borowski's answers, said: "That saved you ten years."

It is true that Borowski is not before us and that the trial judge did not press Poteet in similar fashion for an admission of guilt though he did say to him after he was sentenced: "Until you learn to come clean with me I don't have to give you any consideration and I've given you some,

sir." The approach evidenced by the sentencing record before us was so wide of the mark (*Miler, supra,* 255 *A.* 2*d* 497; *Scott, supra,* 419 *F.* 2*d* 264; *Thomas, supra,* 368 *F.* 2d 941) that special pains should be taken administratively to see that it is not repeated elsewhere in our State. Indeed it would appear that the time is well ripe not only for the establishment of more suitable sentencing guidelines at the trial level but also for the establishment of more effective sentencing review.

As early as 1935 the Judicial Council of New Jersey recommended the establishment of a special "Court of Sentence Adjustment" and, during the past decades, committees of this Court have repeatedly recommended that a special sentencing review part of the Appellate Division be created with a view towards the establishment of proper sentencing guidelines, the elimination of irrational sentencing disparities, and the imposition of more justly enlightened individual sentences. Varying recommendations with the same high goals have been made elsewhere and a studied choice of most any one of them would probably represent an advance over our present system. See Coburn, "Disparity in Sentences and Appellate Review of Sentencing," 25 *Rutgers L. Rev.* 207 (1971); *N. Y. Times,* Oct. 8, 1972, § 4 (News of the Week in Review), at 6, col. 4; *Time, Oct.* 9, 1972 at 55; *cf. ABA Project on Minimum Standards for Criminal Justice — Standards Relating to Appellate Review of Sentences* (1968); *ABA Standards Relating to Sentencing Alternatives and Procedures* (1968).

In *State v. Johnson,* 67 *N. J. Super.* 414 (*App. Div.* 1961) it was held that our appellate courts could review sentences and since then they have exercised a measure of control over their length. See *State v. Bess,* 53 *N. J.* 10, 18 (1968). But they have confined their review to individual trial abuses of sentencing discretion (*State v. Tyson,* 43 *N. J.* 411, 417 (1964), *cert. denied,* 380 *U. S.* 987, 85 S. Ct. 1359, 14 *L. Ed.* 2*d* 279 (1965)) and have not taken steps towards the more comprehensive goals envisioned by the various recommenda-

tions for specialized sentencing bodies or controls. While *Johnson* and its progeny have been all to the good they should not be permitted to retard selective implementation of the recommendations; the subject should again be dealt with either at Judicial Conference or otherwise with a view towards suitably expeditious action.

Justice HALL joins this concurrence.

JACOBS and HALL, JJ., concur in result.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN and Judges CONFORD and SULLIVAN—7.

*For reversal*—None.