Oscar **POTEET**, Appellant,

v.

William **FAUVER**, Warden, New Jersey State Prison.

No. 74–1735.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 20, 1975.

Decided May 7, 1975.

---

Robert J. Borbe, Maressa, Shoemaker & Borbe, Berlin, N. J., for appellant.

Joseph P. Lordi, Essex County Prosecutor, Newark, N. J., for appellee; R. Benjamin Cohen, Asst. Prosecutor, Newark, N. J., of counsel and on the brief.

Before ALDISERT, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal poses the question whether the state sentencing judge subjected appellant to an additional penalty because he refused to admit his guilt following a jury verdict of guilty on charges of armed robbery. If the sentence were so increased, a proper claim of punishment without due process of law would be established, entitling appellant to relief. Although severely critical of the allocution preceding the sentence, the Supreme Court of New Jersey nevertheless declined to grant post-con-

viction relief.[1] The court below followed suit upon a petition for habeas corpus. This appeal followed. We reverse and remand.

At the outset we emphasize that no attack on the guilt-determining process is implicated here. A New Jersey bank was robbed. "Poteet was found in the get-away car after it cracked up. He insisted he was a hitchhiker to whom the codefendants happened to give a ride. When thus apprehended, Poteet was wearing gloves—in July."[2] He was sentenced to a prison term of 14 to 16 years; codefendant Borowski received a five-year sentence in the Bordentown Reformatory. The proceedings resulting in these sentences were the seeds of this controversy. In the language of the New Jersey Supreme Court: "The scene was extraordinary, and we do not recommend that it become a pattern."[3]

### I.

Borowski and Poteet appeared together for sentencing. When each maintained his innocence, the following exchange between the bench and Borowski occurred:

> The Court: You don't even admit your guilt. You regret the jury found you guilty, don't you? You don't admit to me you were there or had anything to do with it, do you?
>
> Defendant Borowski: Sir—
>
> The Court: I'm asking you. Not interested in indictments. I'm less interested in the Fifth Amendment. I'm interested in you were guilty of this crime [sic]. Your buddy; he says he wasn't. What do you say? I'm the man to impose the sentence. Not your buddy. You tell me. Were you there?
>
> .    .    .    .    .
>
> The Court: All right. You are getting worse than Poteet because you are under his influence. You ought to tell me the truth. Don't worry about

1. State v. Poteet, 61 N.J. 493, 295 A.2d 857 (1972).

2. *Ibid.* at 498 n.1, 295 A.2d at 859 n.1.

3. *Ibid.* at 499, 295 A.2d at 860.

Poteet. He can't get you freedom. He can only get you in jail. You tell me what happened. You are a 21 year old boy. Don't pull any gags with me.

Poteet can't keep you out of jail. I can, if you tell me the truth.

Borowski answered at last: "Yes, sir. I was there." The court pressed:

When were you there? Who was with you? I want everything. Give me Poteet and Cabrera. Let's see if you have the guts to give them to me. Who was with you? Come on.

The reply: "Yes, sir. They was there." The court then elicited from Borowski the facts of the caper, and inquired:

When [Poteet] tells me he wasn't there, he's a liar, right? I'm listening. You heard him. He said he didn't do it. The jury made a mistake. Didn't you hear him, didn't you?

Borowski then said Poteet had not been hitchhiking but had, in fact, gone into the bank. Thereupon the court exclaimed, "Right. That saved you ten years."

Immediately after this comment, the judge turned his attention to Poteet:

[He l]ives by the law of the jungle. He thinks he is kidding me when he says he is not guilty; he was hitchhiking and somebody hit him on the head with a bag and put a pair of gloves on him.

You know it is amazing when you young fellows walk into this Courtroom and think you can pull the wool over us. It is bad enough you to try to pull it on the jury. When you try to pull it on the judge who has been around a little bit and who knows the ways of boys and young men and men . . . it doesn't get you anywhere, gentlemen.

It is one thing what you do before the jury. When you come here for sentence, when you are investigated by the probation officer, that's the time for you to come clean, if there is any hope of your ever coming clean.

You want a chance. Your lawyer says that you ought to have a chance; that the Court ought to consider rehabilitation. How can there be rehabilitation if you don't admit your crime, if you say the jury doesn't know what they're doing. Innocent man. Hitchhiking down the road and the jury finds me guilty. What an outrage to sit here in public and try to get the Court to buy that.

The court then pronounced sentence. When appellant protested the length of his term, the judge said: "Until you learn to come clean with me, I don't have to give you any consideration and I've given you some, sir." [4] By contrast, in meting out the reformatory sentence to Borowski, the judge stated: "If you hadn't come clean I don't mind telling you I was going to send you to State Prison for ten to twelve years."

## II.

We accept the statements of law enunciated by former Chief Justice Weintraub of the Supreme Court of New Jersey:

The controlling principles are easily stated although not as easily applied. Surely punishment may not exceed what the man and his offense would warrant merely because he went to trial. A defendant has a right to defend, and although he is not privileged to commit perjury in that defense, the sentencing judge may not add a penalty because he believes the defendant lied. One reason is evident. A man may not be punished except upon a charge and opportunity for hearing. There having been no charge of perjury or conviction for that crime, due process would be denied if further punishment were inflicted for that crime. Another reason, apart from this procedural obstacle, is that the right to defend would be unduly burdened if a defendant understood that, if convicted, his mere denial of the

---

4. Apparently, the court was referring to the concurrent nature of the sentence imposed on the two counts.

charge under oath would without more lead to successive convictions for perjury until he or the State was exhausted. We need not say whether a defendant may ever be indicted when he does no more than falsely deny his guilt at trial; we here refer to the values embarrassed by a perjury prosecution in order to stress the wrongfulness of including in a sentence something extra upon a belief that the defendant lied in asserting his innocence. Upon the proposition that no further penalty may thus be exacted, the cases agree. See Scott v. United States, 135 U.S. App.D.C. 377, 419 F.2d 264 (1969); Thomas v. United States, 368 F.2d 941 (5 Cir. 1966); Miler v. United States, 255 A.2d 497 (D.C.Ct.App.1969); *cf.* Le Blanc v. United States, 391 F.2d 916 (1 Cir. 1968). Speaking of Thomas v. United States, *supra*, we said in State v. De Stasio, 49 N.J. 247, 259, 229 A.2d 636, 643 (1967), cert. denied, 389 U.S. 830, 88 S.Ct. 96, 19 L.Ed.2d 89 (1967):

> "The Court of Appeals properly said that a sentence may not be increased because a defendant defended against the charge or insisted upon his right of appeal."

State v. Poteet, 61 N.J. at 495–96, 295 A.2d at 858–59. Justice Jacobs, concurring in an opinion joined by Justice Hall, and after declaring that "the record of the proceeding during which [Poteet] and his codefendant Borowski were sentenced evidenced such a disturbing approach that I hasten to disavow it," *ibid.* at 499, 295 A.2d at 858, also properly stated the principles which control this case:

> When they appeared for sentencing each was entitled to judicious disposition in the particular light of his presentence report (*cf.* State v. Kunz, 55 N.J. 128, 259 A.2d 895 (1969)) without additional penalty or jeopardy to his right of appeal because of his denial of guilt. . . . As the court put it in *Miler*:
>
> > A trial judge may not penalize a defendant for not admitting guilt

and expressing remorse once the jury has found him guilty. Such an admission might jeopardize his right of appeal or a motion for a new trial. Nor is it proper for the trial judge to impose a heavier sentence because he believes the defendant perjured himself in maintaining his innocence on the stand, or because he exercised his right of a jury trial. 255 A.2d at 498.

*Ibid.* at 500, 295 A.2d at 860–61 (citations omitted).

### III.

Because we have no quarrel with the state's articulation of the relevant law, our sole inquiry relates to its proper application to the cause at hand. *Cf.* Pound, The Theory of Judicial Decision, 36 Harv.L.Rev. 940, 945, 950–52 (1923).

Based on its understanding of the applicable law, the New Jersey Supreme Court reasoned: "Hence we would disapprove a practice of calling routinely upon defendants at sentencing to disavow their stance of innocence. But Poteet was not dealt with that way. The trial judge did not call upon Poteet to admit his guilt. Nor does the transcript suggest the judge would have deemed a confession from him to have any value in fixing his punishment." State v. Poteet, *supra*, 61 N.J. at 498, 295 A.2d at 859.

We disagree. The sentencing judge repeatedly hammered away his disbelief in Poteet's claimed innocence and in his story that he was a hitchhiker. Although the transcript may not affirmatively demonstrate that, if Poteet had "come clean", the judge would have credited him accordingly in assessing sentence, that is not the issue. The question is whether the judge increased the sentence in the absence of a confession. We think the fair inference from the judge's lecture to Poteet is that if Poteet had admitted his guilt, the court would have lightened the sentence. The judge said that he would "like to do something for some of you fellows, but you fellows don't meet me halfway," and

that he did not have to give Poteet any consideration "[u]ntil you learn to come clean with me." This was the crucial dialogue:

> The Court: . . . I'd like to do something for some of you fellows, but you fellows don't meet me halfway. This fellow [Borowski] has got hope. There could be hope for you if you want it, but you don't want it. You don't want it.
>
> Defendant Poteet: I want it, your Honor.
>
> The Court: Pardon?
>
> Defendant Poteet: I want it.
>
> The Court: You want it. You are hitchhiking. You are not a robber. You are a hitchhiker. Hitchhikers ought to go to jail for ten or fifteen years. It is only armed robbers who go to the Reformatory. You see, you are a hitchhiker. Until you learn to come clean with me, I don't have to give you any consideration and I've given you some, sir. All right, gentlemen.[5]

Similarly, we are unpersuaded that the concurring justices properly applied the legal principles, for they reasoned that "[i]n view of his offense and his background the defendant Poteet's sentence was entirely appropriate without regard to whether he admitted his guilt at sentencing . . . ." *Ibid.* at 499, 295 A.2d at 860.

In this respect, we are reminded of Justice Frankfurter's aphorism in another context: "[I]t makes a great deal of difference whether you start with an answer or with a problem."[6] Whether Poteet's sentence was "entirely appropriate"—that is, within the statutory bounds, and justified under the circumstances adduced at trial and elicited by

the probation department's investigation—is not the problem. A fortiori it cannot be the answer. The problem *is* whether *this* sentencing judge included in the sentence an increment of prison time because Poteet refused to admit his guilt. Clearly *this* sentencing judge considered the admission-of-guilt factor a critical element in sentencing Borowski, for we have the judge's own words: "That saved you ten years. . . . If you hadn't come clean I don't mind telling you I was going to send you to State Prison for ten to twelve years." The lack of an affirmative indication in the record that the judge added time for Poteet's refusal to confess does not control this case. We are required to evaluate the permissible, if not compelling, inferences from the sentencing record of Borowski and Poteet construed in its entirety. Since we have concluded that the only fair inference to be drawn is that if Poteet had admitted his guilt the court would have lightened the sentence, we therefore find a constitutional infirmity in Poteet's sentencing procedure. Mindful that in dispensing justice the appearance is often as important as the fact, in this case, we can only conclude that the proceedings at which Poteet was sentenced not only did not appear fair, but also denied Poteet of the protection of due process.

## IV.

Accordingly, we agree completely with the New Jersey Supreme Court's exposition of the appropriate legal principles. We agree also with the court's characterization of the trial judge's conduct as "extraordinary" and not to be recommended, and with the concurring justices' conclusion that the approach of the sentencing court *"was so wide of the*

---

**5.** For a different interpretation of this colloquy, the New Jersey Supreme Court suggested:

> Fairly read, the colloquy does not suggest the trial court would have been impressed in the least by a confession by Poteet or that the punishment was increased because he did not confess. The quoted sentence was part of a lecture intended to encourage Po-

teet to reform by making him realize that he could not hope to fabricate his way out of future criminal involvements.

State v. Poteet, 61 N.J. at 499 n.2, 295 A.2d at 860 n.2.

**6.** Frankfurter, Some Reflections on the Readings of Statutes, 47 Colum.L.Rev. 527, 529 (1947).

**398**

mark . . . *that special pains should be taken administratively to see that it is not repeated elsewhere in our State."* Ibid. at 501, 295 A.2d at 861 (emphasis added).

█ Irrespective of the pains taken by the state to avoid repetition, however, our task in the instant case remains. We must inquire whether Poteet's fourteenth amendment rights were vindicated in the sentencing process. We conclude they were not. Considering the totality of the sentencing judge's comments to Borowski and Poteet, we are not convinced that an increment of prison time was not added to Poteet's sentence because he persisted in maintaining his innocence after the jury had returned a guilty verdict. We conclude that this contravened fundamental principles so ably and accurately capsulated by Chief Justice Weintraub:

> There having been no charge of perjury or conviction for that crime, due process would be denied if further punishment were inflicted for that crime.

Ibid. at 495–96, 295 A.2d at 858.

We will reverse the judgment of the district court and remand these proceedings with a specific direction. The district court will issue a writ of habeas corpus unless the New Jersey authorities agree to vacate the sentence heretofore imposed and accord appellant a new opportunity for sentencing. Were the trial court in the federal system we would exercise our supervisory power and direct that another judge be assigned for resentencing. We do not undertake to exercise what power or authority we may possess to order that this be done in a court system of equal sovereignty.

The judgment of the district court will be reversed and the proceedings remanded in accordance with the foregoing, the district court to retain jurisdiction until the completion of new sentencing procedures in the state court system.

The Clerk is directed to send a copy of this opinion to the Administrative Director of the Courts, Trenton, New Jersey.