UNITED STATES of America

v.

**Richard Jackson ADAMS et al.**

**Appeal of Robert T. MORIANI.**

No. 75–1821.

United States Court of Appeals, Third Circuit.

Argued Jan. 13, 1977.

Decided April 29, 1977.

Jonathan I. Goldstein, Newark, N. J., U. S. Atty., for appellee; Brian D. Burns, Asst. U. S. Atty., on the brief.

David F. Carlamere, Camden, N. J., for appellant, Robert T. Moriani.

Before GIBBONS and GARTH, Circuit Judges, and BECHTLE, District Judge.*

OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal calls into question once again the propriety of a sentence imposed by a

---

* Honorable Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

judge who, convinced that the defendant has lied, adds additional prison time to the defendant's sentence for that reason. In *Poteet v. Fauver*[1] decided May 7, 1975, this Court held that the sentencing judge may not add a penalty because he believes the defendant lied at the defendant's own trial. In *United States v. Grayson*,[2] that holding was reaffirmed. Because we are satisfied that the circumstances of Moriani's having been charged with lying at allocution during sentencing and as a witness at the trial of his codefendant, (rather than at his own trial) should yield no different result, we reverse as to the sentence imposed and remand for resentencing.

## I.

Moriani was indicted with others (including one George Murphy) on two counts of bank robbery under 18 U.S.C. §§ 2113(a) (Count 1) and 2113(d) (Count 2).[3] Subsequently, in connection with his guilty plea to Count 1, Moriani agreed to testify truthfully in the trial of his codefendant Murphy. In exchange, the government agreed to move for the dismissal of Count 2 when Moriani was sentenced, and also agreed to inform the sentencing judge of Moriani's cooperation in those cases involving his codefendants that still remained to be tried.

Moriani's plea proceeding was under oath[4] and was unexceptional, with the district court judge making the necessary inquiries to assure himself that Moriani's plea was voluntary. *See* F.R.Crim.P. 11. Moriani acknowledged the conditions specified by the government and that the offense to which he was pleading guilty carried a maximum prison term of 20 years.

After retracting his not guilty plea on March 20, 1975, but before his sentence was imposed, Moriani testified at the trial of George Murphy. Murphy was ultimately convicted on both counts.

Both Moriani and Murphy were sentenced on June 20, 1975. Moriani when asked at that time if any promises as to sentence had been made to him, responded:

"The prosecutor said they would make a recommendation for a very light sentence and it would be served at Lewisburg and you asked the prosecutor and that was verified."

The district court judge determined that Moriani's statement was at variance with the statements made at the plea proceedings and after citing various aspects of Moriani's involvement in the robbery and concluding that Moriani had lied both at Murphy's trial and during his own sentencing proceeding, sentenced Moriani to 20 years in prison.[5] This appeal followed.

## II.

Two briefs on appeal were filed in support of Moriani's position. A *pro se* brief filed by Moriani seeks "A three-judge constitutional court to convene and motion for interlocutory injunction and motion for a temporary restraining order . . .", ordering his release from confinement. That brief challenges the constitutionality of 18

---

1. 517 F.2d 393 (3d Cir. 1975).

2. 550 F.2d 103 (3d Cir. 1977).

3. 18 U.S.C. § 2113(a) proscribes the taking of money from a bank by force and violence or intimidation. The maximum prison penalty for this offense is 20 years.
   18 U.S.C. § 2113(d) involves the use of a dangerous weapon in the commission of a bank robbery. The maximum prison penalty for such offense is 25 years.

4. *See United States v. Hawthorne*, 502 F.2d 1183, 1188 (3d Cir. 1974).

5. Moriani's codefendant, Murphy, who after pleading not guilty had been tried and convicted by a jury, was sentenced to a term of 14 years imprisonment pursuant to 18 U.S.C. § 4208(a)(2).

U.S.C. § 2113,[6] asserting a lack of federal jurisdiction. Moriani in this brief argues that the Federal Deposit Insurance Corporation (FDIC) is a privately owned institution; that the FDIC insures depositors, not banks; that no federal law could be violated, unless and until, by reason of theft, the bank was rendered insolvent (a circumstance which would force the FDIC to make good on its depositors' accounts); and that therefore Congress lacks the power and means to legislate in this area. There is no merit to this argument. *United States v. Allen,* 458 F.2d 988 (3d Cir. 1972).

Moriani's counsel, on the other hand, by a brief which seeks resentencing, raises the following three points: (a) that the sentencing judge was prejudiced against Moriani by reason of Moriani's testimony in the case of *United States v. Murphy*; (b) that the sentencing judge believed Moriani to be a liar and perjurer and improperly considered these factors in the imposition of Moriani's sentence; and (c) that the United States Attorney's Office failed to follow the plea bargain on the strength of which the appellant entered his plea of guilty.

### III.

All of the issues raised by Moriani center on three events: Moriani's plea proceeding (March 20, 1975); Moriani's appearance at the trial of his codefendant (April 17, 1975); and Moriani's sentencing (June 20, 1975).

At his plea proceeding on March 20, 1975, Moriani's counsel made the following representation:

We are prepared to come forward at this time and retract a previously entered plea of not guilty and at this time enter a plea of guilty to the first count of the indictment. Your Honor please, we are entering this plea on the strength of a conference that I had with the United States Attorney's office to the effect that at the time of sentencing the second count of the indictment would be dismissed. Also, Your Honor, that if there is any cooperation given by Mr. Moriani

in any other cases that may remain, that would be made known to the Court. That is the extent of any kind of pre-negotiations that we had, Your Honor.

Moriani was then sworn. A routine and thorough plea proceeding followed. Then the following colloquy between the court and Moriani took place:

[THE COURT] Q. And are you aware of the fact that this [and is] an offense which carries with it a maximum penalty of 20 years imprisonment, a fine of $5,000 or both?

A. Yes, Your Honor.

Q. Understand that?

A. Yes.

Q. Now, have any promises been made to you by your attorney or the United States Attorney or anybody at all as to what the sentence of the Court will be?

A. Just what was stated previously, that count 2 will be dropped and a recommendation will be made if I cooperate.

Q. Is that your sole understanding?

A. That is my sole understanding.

THE COURT: Mr. Carlamere, [Moriani's counsel] you have indicated that that is your version of the negotiations you have had with counsel for the United States?

MR. CARLAMERE: That's correct, Your Honor.

THE COURT: Now, what is the government's version?

MR. KURZWEIL: [Assistant United States Attorney]: Your Honor, essentially, we concur with what has been stated to you; the only difference I would note is that another condition of our moving to dismiss count 2 is that if called upon Mr. Moriani will testify truthfully in the trial of *United States v. Murphy,* his codefendant. We won't move to dismiss count 2 until such time as he does so testify if called upon to do so.

THE COURT: Will you do that, Mr. Moriani?

---

**6.** 18 U.S.C. § 2113 concerns robbery of a bank "the deposits of which are insured by the Federal Deposit Insurance Corporation". *Id.* § 2113(f).

THE DEFENDANT: Yes, Your Honor.

BY THE COURT: Q. You understand that the Court can't compel you to testify—

A. I know this.

Q. —against your codefendant, nor can the United States Attorney compel you to testify against a codefendant, nor can your own attorney compel you to do that? Understand that?

A. Yes.

Q. All the government is saying is that if you do that, that will be a recommendation to the Court for the Court to consider in the imposition of sentence.

A. I realize.

Q. Understand that?

A. I understand.

Q. And you further understand that only the judge can impose sentence upon you?

A. Yes, Your Honor.

Q. Nobody else can?

A. Yes, Your Honor.

Q. And the judge isn't bound by any understanding or agreement that may have been made or reached by your attorney and the United States.

A. I understand.

In essence therefore, the plea agreement was a simple one. Moriani pleaded guilty to count 1 (18 U.S.C. § 2113(a)) of the indictment. He did so in exchange for promises made by the government that: (1) the government would at sentencing dismiss count 2 (18 U.S.C. § 2113(d)) if Moriani had testified truthfully at the trial of Murphy, his codefendant; and (2) if Moriani cooperated with the government, such cooperation would be made known to the trial judge at the time of sentencing.

Thereafter, Moriani testified at Murphy's trial, which was held approximately one month after Moriani had pleaded guilty. Moriani, although subpoenaed by the government, was not called as a government witness. Rather, he testified for the defense. His testimony can best be characterized as exculpatory as to Murphy. He denied that Murphy had taken any part in the bank robbery and he denied statements which he, Moriani, had purportedly given to the FBI.[7]

---

**7.** Although the government had Moriani under subpoena, it chose not to call him as a witness. Instead, Moriani testified for the defense and by his testimony sought to exculpate Murphy. According to Moriani, he, Moriani, had planned, organized and executed the robbery with others—but not with Murphy. Moriani claimed that Murphy had been babysitting with his [Moriani's] daughter and had neither participated in, nor had knowledge of, the robbery.

In his charge, the district court judge, after noting the "sharp conflict between the testimony of the government's witnesses and that of defense witness Moriani," summarized the government's theory of Murphy's involvement in the robbery as follows:

It is the theory of the government's case, supported by the testimony of witnesses produced by the government, that four men, Richard Adams, his brother, Ronald Adams, a juvenile, Robert Moriani, this defendant, George Murphy, and one woman, Margaret Hudson, knowingly and willfully participated in a planned armed bank robbery of a branch of the Heritage Bank at Camden, New Jersey, on October the 16th, 1974.

The government contends that three men, Moriani and the two Adams brothers, were inside the bank, one armed with a revolver, another with a shotgun, who actually committed the robbery. Miss Hudson was outside somewhere near the bank with a waiting stolen getaway car, and it is also the government's theory and also the testimony of the government's witnesses that George Murphy, the defendant in this case, was in another waiting stolen getaway car which he stole and which was further removed from the bank and which was knowingly used by him to aid the robbers' flight from the bank in pursuance of a common criminal purpose.

Defense witness, Robert Moriani, admits the commission of the armed robbery, admits his role therein and that of the others, but he denies that the defendant, Murphy, played any part at all in the alleged offense.

An FBI agent (Waller) testified that in his interview with Moriani, Moriani admitted that he had discussed the robbery with Murphy and that Murphy and he had stolen the getaway cars; but that, if Murphy was prosecuted, he, Moriani, would "tell the jury during the trial that Murphy had no involvement in the bank robbery even though he had just told me [Waller] otherwise." Transcript of April 17, 1975 at 79–80, *United States v. Murphy,* Crim. No. 74–447 (D.N.J. June 20, 1975).

After Murphy's conviction, sentencing of both Moriani and Murphy was set for June 20, 1975. The same district court judge who had presided at Murphy's trial and who had earlier taken Moriani's plea presided at the sentencing.

Addressing Moriani first, the court inquired:

Q. Were any promises made to you by anybody at all as to what the sentence of the court would be?

A. [Moriani] The prosecutor said they would make a recommendation for a very light sentence and it would be served at Lewisburg and you ask the prosecutor and that was verified.

At this point the district court judge recessed to obtain a transcript of Moriani's plea proceeding. After the transcript had been produced by the court reporter, it was read to Moriani. The court inquired of Moriani where it appeared (in the transcript of the plea proceeding) that the United States would recommend a lenient sentence and that he, Moriani, would be confined to Lewisburg.[8] The colloquy at sentencing continued:

Q. [BY THE COURT] At the time you entered your plea you stated and the United States Attorney stated and your attorney, Mr. Carlamere, stated that no promises were made of any kind other than, other than that the second count would be dismissed.

A. [Moriani] Not no promises.

Q. And if you cooperated with the government and if you testified truthfully during the trial of Mr. Murphy, that would be brought to the Court's attention to be considered by the Court in the imposition of your sentence.

A. Here, again, not no promises, a recommendation. He kept within the

law. I say a recommendation. Even during the course of Murphy's trial that I brought up I was being threatened, and so forth, and so on.

It was then after additional colloquy that the district court judge stated:

THE COURT: Well, that is my recollection [of the plea bargaining] too, but rather than rely upon my recollection or yours or Mr. Carlamere's or Mr. Moriani's, I had the court reporter find his notes, and they were just read to me and to all of us and they clearly indicate that no promises were made as to the placement or the section under which sentence would be imposed or that the United States Attorney's office recommended a lenient sentence. The only promise made, the only condition that was entered into in the plea bargaining negotiations was that the second count, which carries with it a penalty of five years, [*sic*[9]] would be dismissed upon the imposition of sentence.

Mr. Moriani, the Court has rather limited sympathy for you. You were the mastermind, admittedly so, from what I just read, or just heard, as did you, of this entire robbery.

This was a serious offense, armed robbery. You have a previous record, and the most aggravating part about the commission of your offense is that you enlisted to aid you in the commission of this offense a juvenile who was armed with a sawed off shotgun standing at the door and you enlisted a nineteen year old boy who went in and took the money from the bank employees and a young lady who is about twenty years of age— Richard Adams was nineteen at the time of this offense, and Margaret Hudson, who was outside with an automobile is

---

**8.** The Court also inquired with respect to what it evidently felt had been represented by Moriani, i.e., that Moriani would be sentenced under 18 U.S.C. § 4208(a)(2).

**9.** As earlier noted, the maximum prison penalty for a violation of 18 U.S.C. § 2113(d) is 25 years (*see* n.3 *supra*). It is obvious that the district court judge in this colloquy with Moriani was referring to that penalty, which is five years

more than the maximum prison penalty for a violation of § 2113(a), the subject of the first count to which Moriani pleaded guilty. No issue has ever been raised with respect to this discussion. Nor could such an issue, if raised, be supported in light of the entire record including references in Moriani's testimony at Murphy's trial to the plea agreement.

twenty years of age and with no record at all—as your codefendants and participants in the commission of this armed bank robbery, wherein over twenty-one thousand dollars was taken from the bank. If there had been twice that much or five times that much, I am certain that all of that would have been taken too.

I don't feel that you have cooperated with the Government at all, and *I don't think that you told the truth when you testified in Mr. Murphy's case.* I have never imposed the maximum sentence since I have been on the bench, but if there is any case in which the maximum sentence is warranted in view of your entire attitude this is it. *You lied to this Court even during these proceedings where you indicated that · the United States Attorney would recommend or did recommend that a lenient sentence be imposed upon you, that the place of confinement will be recommended and that the Section 4208(a)(2) provision would be employed in the imposition of sentence.*

THE DEFENDANT: No Sir, Your Honor.

THE COURT: The record clearly indicates that nothing whatsoever was so recommended and even your own attorney says that the record conforms with his recollection of what occurred at the time the plea was entered   .   .   . .

Transcript of June 20, 1975 at 11–14 (Emphasis added.)

Moriani was then sentenced to a 20 year prison term and Count II of the indictment was dismissed. As previously noted (*see* n.4 *supra*), Murphy was sentenced to a 14 year prison term pursuant to 18 U.S.C. § 4208(a)(2).

## IV.

Moriani's argument that the plea bargain into which he had entered had been breached by the government requires little discussion.

His argument is phrased as follows:

He [Moriani] was threatened, harrassed [sic], and then promised a lighter sentence in return for his guilty plea and the withdrawal of his various pro se motions regarding subject matter jurisdiction.

Appellant's Br. at 2.   Further,

.   .   .   [Moriani] contends that in return for his plea of guilty, it was promised that he would receive a lighter sentence than that given to his co-defendant, George Murphy, who was standing trial. And that if he were to testify truthfully at the trial of his co-defendant, this fact would be made known to the court of the United States Attorney's office as a recommendation for consideration. It was this part of the plea negotiation that was not followed.

Appellant's Br. at 3.

Based on these assertions, it is contended by Moriani that because he gave testimony favorable to Murphy, the district court judge "became prejudiced against [Moriani] at [Moriani's] sentencing."

The difficulty with this argument is manifest. First and foremost, the record does not support Moriani's claims. As stated, the government agreed to dismiss Count II if Moriani testified truthfully at Murphy's trial. Whether or not that condition was satisfied by Moriani, the fact remains that the government *did* live up to its part of the bargain: Count II was dismissed.

Second, Moriani himself testified at trial that he expected to be sentenced to 20 years, and that his attorney during a recess at Murphy's trial told him [Moriani]:

Look, you are killing yourself.   .   .   . I don't know what you are doing this for.   .   .   . When I go in front of that man now [the district court judge], I can't ask him to give you no kind of a break.

Transcript of April 17, 1975 at 72, *United States v. Murphy,* Crim. No. 74–447 (D.N.J. June 20, 1975).

He also affirmed once again that he understood that the court was not bound by any recommendation that might be made by the United States Attorney. *Id.* at 71.

Third, in the context of these proceedings—where the same district court judge conducted Moriani's plea proceeding, presided at Murphy's trial, and then at Moriani's

sentencing, discussed the extent of Moriani's "cooperation"—it is evident that the terms of the plea agreement were met. *Cf. United States v. Crusco,* 536 F.2d 21, 25–26 (3d Cir. 1976). Moreover, Moriani at no time ever sought to set aside or withdraw his guilty plea.[10] His endeavors have been limited to seeking either vacation or reduction of his 20 year sentence. His complaint was and is that the sentence imposed upon him was too severe, exceeding whatever expectations he initially entertained.

We are satisfied in light of the overall record that Moriani's plea bargain was in no way breached by the government.

### V.

While we are satisfied that Moriani's plea proceeding was properly conducted, we cannot say that Moriani's contention respecting the increase of his sentence because he lied, is without substance.

Just recently we have reaffirmed the principle established in *Poteet v. Fauver,* 517 F.2d 393 (3d Cir. 1975), that a trial judge is prohibited from increasing a defendant's sentence because he believes that the defendant has lied. *United States v. Grayson,* 550 F.2d 103 (3d Cir. 1977). In both *Poteet* and *Grayson* the increased sentence had been imposed upon a defendant who himself had testified at his own trial before the particular sentencing judge and who was found by that judge to have lied either during, or subsequent to, the trial proceeding.

Here, Moriani's situation is somewhat different. Moriani, if he lied, lied as a witness during the trial of a codefendant—not at a trial to determine his own guilt or innocence.[11] In addition, Moriani also was deemed to have lied at his sentencing proceeding when he apparently recited the promises made to him by the government in a form different that that which the district court judge remembered from the time that Moriani retracted his not guilty plea.

It is evident beyond question that the district court judge imposed a 20-year maximum sentence on Moriani because of his belief that Moriani lied. The judge's observation just prior to sentencing is crystal clear in this respect:

> I don't feel that you have cooperated with the Government at all, and I don't think that you told the truth when you testified in Mr. Murphy's case. I have never imposed the maximum sentence since I have been on the bench, but if there is any case in which the maximum sentence is warranted in view of your entire attitude this is it. You lied to this court even during these proceedings where you indicated that the United States Attorney would recommend or did recommend that a lenient sentence be imposed upon you, that the place of confinement will be recommended and that the section 4208(a)(2) provision would be employed in the imposition of sentence.

While we can understand and sympathize with the sentencing judge's perturbation at Moriani's testimony and representation,[12] nevertheless, under the law of this Circuit, Moriani's sentence was improperly imposed.

Although, as we have acknowledged, Moriani's allegedly untruthful testimony was given not at his own trial, but rather at the trial of a codefendant, we discern no substantive difference between this case and *Poteet* and *Grayson.* The rationale undergirding *Poteet* and reaffirmed in *Grayson* is every bit as applicable to the situation here as to the situation where the "lie" occurs at the defendant's own trial. As we said in *Poteet:*

> A man may not be punished except upon a charge and opportunity for hearing. There having been no charge of perjury

---

**10.** Such an application would have to be made in the district court in the first instance. The record is silent as to any such proceeding.

**11.** As earlier noted, Moriani had entered a guilty plea to one of the charges for which his codefendant was standing trial.

**12.** It should be noted that although Moriani had been sworn at his plea taking, he was not under oath at sentencing.

or conviction for that crime, due process would be denied if further punishment were inflicted for that crime.

517 F.2d at 395, *quoting State v. Poteet,* 61 N.J. 493, 495–96, 295 A.2d 857, 858 (1972). *Cf. United States v. Garcia,* 544 F.2d 681 (3d Cir. 1976).

Here, even though Moriani was deemed by the trial judge to be a thoroughly incredible witness, it must be recognized that Moriani's testimony was not at variance with his plea, and that the government at all times could have sought an indictment against him for perjury. *See United States v. Hawthorne,* 502 F.2d 1183, 1188 (3d Cir. 1974).[13]

While we concede that a comparison of Moriani's testimony at his plea proceeding with his testimony at his sentencing reveals appreciable and significant differences, even without the rule of *Poteet* we would be most reluctant to permit punishment by added prison time for what perhaps could have been no more than the product of a faulty memory. Of one thing we are certain—no one was fooled or misled by Moriani's recitation of his plea particulars. Indeed, this case at least in one respect highlights the protection afforded by the *Poteet* rule—for even the district court judge apparently erred in attributing to Moriani the promise or representation that Moriani's sentence would be imposed under 18 U.S.C. § 4208(a)(2). (*See* note 8 *supra*).

 We appreciate the restraint and patience displayed by the district court judge in dealing with a difficult situation and a rather freewheeling individual. However, we are also confident that no matter how aggravating these circumstances may have been, the learned district court judge would have withheld increasing Moriani's sentence had the instructions and guidelines of *Poteet*[14] and *Grayson* been available at the time of sentencing. Nonetheless, in light of those precedents, we are obliged to reverse and remand to the district court for resentencing.

## VI.

For the reasons hereinabove set forth, we will reverse and remand to the district court with directions that Moriani's sentence be vacated and that he be resentenced without consideration of his alleged false testimony at trial and at sentencing allocution. Under the circumstances presented, we think it advisable that another district court judge be assigned for resentencing. *See Poteet v. Fauver, supra,* 517 F.2d at 398.

**13.** In *Hawthorne* this Court recognized the value of an independent proceeding in protecting the integrity of, in that case, plea proceedings. We observed:

> Considering the increasing number of applications for withdrawal of guilty pleas predicated on 'promises,' 'representations,' 'predications' and the like, allegedly made by defense counsel to defendants, it now becomes apparent that what we may have once considered merely an advisable measure for Rule 11 proceedings has now become imperative. We believe that the district courts should place defendants under oath for the Rule 11 proceedings, and that the *Paradiso* and *Valenciano* advice and disclaimers should be included as well.
>
> While we recognize that such disclaimers, even under oath, may not obviate the necessity of subsequent § 2255 evidentiary hearings, *they may furnish a basis for an independent proceeding against the defendant who*

> answers the court's inquiries under oath and later attempts to withdraw his plea, claiming that the answers previously given were untrue.

*Id.* (Emphasis added.) Where added imprisonment is involved, as it is here, the considerations to which this Court gave attention in *Hawthorne* and *Poteet* appear even more impressive.

**14.** The *Poteet* opinion was filed May 7, 1975. It is extremely doubtful that the opinion in printed form was available to the bar and bench prior to Moriani's sentencing in June 1975. Prior to *Poteet,* this Circuit had not ruled on the issue of sentence enhancement and, as we pointed out in *Grayson,* many differing views existed in the various courts as to what constituted appropriate standards for sentencing in the context at issue here.