751 P.2d 576

**The STATE of Arizona, Appellee,**

v.

**Charles Anthony McDONALD, Appellant.**

**No. 2 CA–CR 87–0477.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 30, 1987.

Review Denied March 30, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Joseph T. Maziarz, Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Terry J. Adams, Phoenix, for appellant.

## OPINION

ROLL, Judge.

Appellant Charles Anthony McDonald appeals from convictions for armed burglary, armed robbery, and kidnapping. McDonald argues that the prosecutor engaged in impermissible argument, the trial court improperly considered the truthfulness of McDonald's testimony in deciding the appropriate sentence, and the trial court improperly increased McDonald's sentence from that received after his first trial. For the reasons set forth below, we affirm.

### STATEMENT OF FACTS

On May 1, 1984, at approximately 3:00 a.m., Nigel Yorwith was leaving a Goog's Restaurant in Phoenix when he was approached by two armed and masked individuals. One man had a handgun and the second man had a shotgun. One of the gunmen told Yorwith: "Freeze, you motherfucker." Yorwith ran back into the restaurant and was followed by the two gunmen.

At the time, there were several employees and customers inside. The two robbers forced the employees and customers to lie down on the floor. One of the two robbers told a waiter: "[D]on't move or I'll shoot you." Money, jewelry, and purses were among articles collected by the two men. Dorothy Robison, the night manager of Goog's, was told by one of the gunmen: "[G]et down you bitch, or I'll blow your brains out.—[G]et down and crawl."

While the robbery was in progress, Phoenix police officer Mark Raimo arrived at Goog's to investigate a reported possible armed robbery in progress. The officer saw a delivery man walking away from the restaurant. The delivery man told Raimo that everyone in the restaurant was lying on the floor. Raimo then cautiously approached the restaurant and looked through a window. Inside, he saw an individual who was wearing a "cap," had a bandana over his face, and was wielding "what appeared to be a short barrelled rifle." Raimo then requested assistance.

Shortly after Officer Randall Driscoll arrived, Driscoll observed an individual running towards the front door. The officer positioned himself near the front door to wait for the individual to come out. Instead, the individual crashed through a front window of the restaurant and began to run. This individual was appellant, Charles Anthony McDonald. When apprehended, McDonald was wearing rubber gloves, a bandana over his face, and another bandana over his hair. He had a pay voucher with money inside which had been taken from Yorwith during the robbery. The police found a loaded shotgun on the floor near the front of the restaurant. Several items, including ladies' purses and a Valley National Bank bag, were found outside the back door to the restaurant. No one else was apprehended at the scene.

Around 6:30 a.m., Shirley Erickson, McDonald's girlfriend, and Nannette Wick, Terry Lynn McCutcheon's girlfriend, arrived at the restaurant. They told police that McDonald had been with McCutcheon earlier in the evening and that the two men had left Erickson's apartment together around midnight. Erickson told the police that she owned a white Monte Carlo and a green 1973 Buick Riviera. McDonald had his own set of keys to the Riviera and normally drove that car. The police did not find the Riviera in the parking lot of Goog's. A detective accompanied Erickson back to her apartment and observed that the 1973 Riviera was not there. The detective then arranged for surveillance of the complex in the hope that McDonald's accomplice would arrive.

Around 9:30 a.m., McCutcheon arrived at the apartment complex in Erickson's Riviera. When detained at that time, he possessed a .357 magnum handgun and a portable police scanner. Inside the Riviera was a bank bag and property taken in the robbery belonging to Goog's customers.

At the joint trial of McCutcheon and McDonald, the trial court questioned an apparently deadlocked jury regarding its ability to reach a verdict. This questioning resulted in the reversal of the convictions of both men. *State v. McCutcheon*, 150 Ariz. 317,

723 P.2d 666 (1986); *State v. McDonald*, (CR 86–0045–T, memorandum decision filed September 11, 1986).

Thereafter, McDonald stood trial alone. At his trial, McDonald testified that he had been a customer at Goog's when the holdup occurred. He told the jury that he found a wad of paper with money inside on the floor which he "instinctively" picked up. This paper and money consisted of a pay voucher containing cash which had previously been taken at gunpoint from a customer. McDonald stated that he put on a pair of rubber gloves in the kitchen, covered his face with a bandana he had, and used a second bandana to cover his head. He then jumped through the window of the restaurant because he had two felony convictions and did not want to be present when the police arrived.

## ISSUES ON APPEAL

On appeal, McDonald argues that the prosecutor engaged in misconduct by discussing McDonald's two prior felony convictions with the jury during closing argument. McDonald also asserts that the trial court erred when, at sentencing, it considered what was perceived to be false testimony by McDonald. Finally, McDonald argues that when he was resentenced following his second trial in connection with the Goog's robbery, he received an increased punishment over what he had received after his first trial.

## IMPROPER ARGUMENT

In explaining why he fled from the restaurant through the front window, McDonald testified:

> Well, I was in a pretty bad predicament, I felt, because, you know, I had two prior felony convictions, you know, as a youngster, and I really just didn't want to get caught up in a situation like this.

■ McDonald points to three instances of alleged impermissible argument by the prosecutor. The three instances pointed to by defense counsel are quoted in the brief as follows:

Mr. McDonald would have you believe that although he's terrorized in here, not only is he terrorized by the thought that there's robbers running around in here with weapons terrorizing people again, he's terrorized because the police are going to come and he's a two-time convicted felon and he has had problems with the police, and he doesn't want them to suspect that he is the robber because he's cowering over here in the pay phone booth.

\* \* \* \* \* \*

Mr. McDonald is a two-time convicted felon. He has been convicted of two felonies in the past....

\* \* \* \* \* \*

Do you want to believe a person, a two-time convicted felon, who has everything to gain by lying and nothing to lose?

The first segment of the prosecutor's argument permissibly portrays McDonald's testimony.

In examining the record, we observed that the second and third statements quoted above and raised on appeal as error, included additional important language. In its entirety, that portion of the prosecutor's argument reads:

Mr. McDonald is a two-time convicted felon. He has been convicted of two felonies in the past. The Judge is going to instruct you that it is proper that you are not to consider that as to whether or not that reflects on him as a good person or a bad person. You are merely to consider that to help you weigh his credibility, weigh and balance.

Do you want to believe a person, two-time convicted felon, who has everything to gain by lying and nothing to lose?

The prosecutor's argument emphasized the limited purpose for which the jury could consider the prior convictions. We also note that there was no objection to any of the three above-quoted arguments. At the conclusion of argument, the trial court gave the jury a cautionary instruction informing them of the limited purpose for which evidence of the two felony convictions was admitted. We find no error.

## TRIAL COURT'S CONSIDERATION OF FALSE TESTIMONY IN ARRIVING AT SENTENCE

At sentencing, the trial court stated:

I also wish to tell him that I feel that the outrageous falsehood he told in his testimony, which in my opinion is evidence of a total and complete unrepentance and lack of desire to change, indicates to me that under the circumstances the Court must give him the maximum sentence available.

McDonald argues that it is impermissible for the trial court to aggravate a sentence merely because the defendant refuses to admit guilt. *State v. Holder*, 155 Ariz. 80, 745 P.2d 138 (1987), *rev'd. on other grounds*, 155 Ariz. 83, 745 P.2d 141 (1987). In *Holder* the trial court found that a defendant's refusal to admit guilt constituted an aggravating circumstance. In the matter before us, it is clear from the trial court's statement that it viewed the defendant's perjurious testimony as an aggravating circumstance in determining the appropriate sentence. This is permissible. *State v. Lask*, 135 Ariz. 612, 615, 663 P.2d 604, 607 (App.1983).

Although McDonald contends that *Poteet v. Fauver*, 517 F.2d 393 (3d Cir.1975), stands for the proposition that the sentencing judge may not add a penalty because he believes the defendant lied, *Poteet* preceded the Supreme Court decision of *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Although *Grayson* was not cited to us by counsel for McDonald, it specifically overruled *Poteet.* In *Grayson*, the Supreme Court stated:

Assuming, *arguendo*, that the sentencing judge's consideration of defendants' untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is entirely permissible. There is no protected right to commit perjury.

438 U.S. at 54, 98 S.Ct. at 2617–18, 57 L.Ed.2d at 592.

The trial court did not err in considering McDonald's false testimony in deciding the appropriate sentence.

## INCREASED PUNISHMENT

After McDonald's first trial, he was sentenced to 20 years' imprisonment for one count of armed burglary, 21 years' incarceration for seven counts of armed robbery, and 25 years' imprisonment for nine counts of kidnapping, all of which were to run concurrently. Thereafter, McDonald's convictions were reversed.

After McDonald was again convicted, he was sentenced to 10 years' imprisonment for one count of armed burglary, 21 years' imprisonment for seven counts of armed robbery, 14 years' imprisonment for four counts of kidnapping, all of which were to run concurrently, and 14 years' imprisonment for five additional counts of kidnapping, which sentences were to run consecutive to all other counts.

On appeal, McDonald contends that he has now been sentenced to 28 years' imprisonment, whereas he had previously been sentenced to 25 years' imprisonment following his first trial. McDonald argues that his most recent sentence is in violation of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

█ We do not believe that the sentences imposed violate *Pearce*. The trial court explained its reasons for the sentences:

I think the record should explain why I have done this. Judge Stover gave him 20 years with a prior on the armed burglary, and that calls for a two-thirds hard sentence because he had the prior.

Judge Stover gave him 21 years on the class 2 dangerous, the armed robbery, all concurrent, and that also called for a two-thirds sentence, and that remains basically the same.

On the armed kidnapping she gave him 25 years, all concurrent, which was also a hard sentence, which would mean he would not be eligible for release, parole, etc. until he served 16 and two-thirds years.

I can't match that because the priors were not proven, really on my request. So what I've tried to do is match it as close as I can. The ten years really doesn't matter, the 21–year term remains the same, and I have come up with two 14–year terms, one on top of the other, which makes a total of 28 years, which is more than the 25 years, but since they are soft sentences the minimum if he served half is 14 years, which is less than the 16 and two-thirds he would have to serve on the 25–year term, and I consider that is two and two-thirds years less for the minimum and three years more.

That is really the closest I can come and that is really the best explanation of how I arrived at the sentence, because that's the only and closest way I could attempt to match Judge Stover's sentence. So that's basically what I have done.

We believe that the sentence imposed is permissible. Although it is numerically larger than the original sentence following McDonald's first trial, the practical effect of the later sentence is to reduce McDonald's incarceration. The record gives no indication of vindictive purpose on the part of the sentencing judge. However, we do note that if the trial court needed additional grounds to numerically increase McDonald's sentence, such grounds exist based upon McDonald's perjurious testimony.

For all the reasons set forth above, we affirm.

LIVERMORE, P.J., and FERNANDEZ, J., concur.