COMMONWEALTH *vs.* DARRYL L. MURRAY.

Suffolk.    February 9, 1976. — July 26, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Remark by judge, Sentence.

At a criminal trial, a judge's improper remark which could be under-
stood as an opinion that the defendant was guilty, did not require
a new trial where he made repeated and emphatic admonitions to
the jury that they were to disregard his comment. [494-495]
In determining the sentence to be imposed on a criminal defendant who
had testified in his own behalf, the judge erred in taking into con-
sideration his belief that the defendant had committed perjury dur-
ing the trial. [495-498]

INDICTMENT found and returned in the Superior Court
on November 6, 1974.

The case was tried before *Keating, J.*

*Richard S. Goldstein* for the defendant.

*Frances M. Burns,* Assistant District Attorney (*Chris-
topher A. Quinn,* Special Assistant District Attorney, with
her) for the Commonwealth.

GOODMAN, J.    The defendant appeals (G. L. c. 278,
§§ 33A-33G) from his conviction of unarmed robbery. The
victim, a twenty-one year old woman, testified at trial that
the defendant and a male companion seized her as she
descended the stairs at the Prudential subway station on
the evening of September 21, 1974. The two men took $9.38
(consisting of a five dollar bill, three one dollar bills, and
change) from her wallet and fled. Police of the Massachu-
setts Bay Transportation Authority were notified and ar-
rived at the scene shortly thereafter. The victim accom-
panied the police officers in their cruiser as they searched
the vicinity. The victim spotted the defendant and his
companion inside a sandwich shop about four blocks from

the scene of the crime. The officers and the victim entered the shop; the victim again identified the two males as her assailants. The officers asked the two to empty their pockets; they did so, producing a five dollar bill, three one dollar bills, and some change. The two males were then placed under arrest.

1. One of the police officers testified that while the defendant was in a cell at the police station he said to the officer, "How about giving me some money for cigarettes? I had that cigarette money when I made the hit." The officer testified that he then gave the defendant sixty cents of the money which had been taken from him earlier. During cross-examination the following colloquy occurred:

COUNSEL FOR THE DEFENDANT: "So you were going to give this girl what was left and say that belonged to her. Is that what you were going to do?"

THE PROSECUTOR: "Objection."

THE COURT: "[To counsel for the defendant] Whatever his reasons ... this is what he said, and this is what he did. I join with you in your outrage over this lady's money being given to him for cigarettes. Will you go on to something else."

Counsel for the defendant then moved for a mistrial, arguing that the court's comments suggested to the jury that the money found on the defendant had belonged to the victim and thus that the court had expressed its opinion that the defendant was guilty of the offense charged. The motion was denied. Shortly thereafter, the cross-examination of the witness was completed. The trial judge then addressed the jury as set out in the margin.[1] Again, dur-

---

[1] "... [A]ny comments that the Court makes on evidence or that might indicate to you that I have any particular position on evidence in this case, disregard it. You are to decide this case on the evidence that you hear from this witness stand and on that only.

"So any colloquy between me and counsel and counsel with each other or any comments by them, even opening and closing arguments, are not to be considered by you as evidence.

"All right? There was an exchange between [counsel for the defendant] and me, and in the event that you feel that it indicates my feelings at all, please don't, because I have no feelings and no position in this case whatsoever. That's your job, and I wouldn't infringe on it."

ing his charge the trial judge instructed the jury that "if through any indication or acts on my part, you might feel I lean a certain way, you are to disregard any thought that I have any opinion in this case, because I haven't. It's not my job."[2]

It is clear that the trial judge realized the impropriety of his remark to the defendant's counsel and took great pains to impress upon the jury that they should disregard it. We cannot say that these emphatic and repeated admonitions were not sufficient to accomplish that purpose. *Commonwealth* v. *Leventhal,* 364 Mass. 718, 723-724 (1974). See *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 226-228, cert. den. sub nom. *McLaughlin* v. *Massachusetts,* 389 U. S. 916 (1967); *Commonwealth* v. *Fleming,* 360 Mass. 404, 409 (1971); *Commonwealth* v. *Haley,* 363 Mass. 513, 520-522 (1973). Cf. *Commonwealth* v. *Borges,* 2 Mass. App. Ct. 869 (1974).

2. The defendant testified in his own behalf and produced two alibi witnesses. Prior to the imposition of sentence, and after reviewing the defendant's record, the trial judge remarked: "I don't see a flicker of hope for him." The prosecuting attorney recommended six to nine years at Walpole, and the judge then sentenced the defendant to that term saying, "I am not punishing this boy one minute for trying his case, but I am punishing him for coming up here and lying and for his whole attitude."[3]

The sentencing judge may take into consideration a

---

[2] The court went on to say: "In this case you are the fact finders, and so you don't try and read in this or any other case how you feel the Court might be leaning, either through expressions or comments or anything else, because I would be invading your province, and you have every right to resent it."

[3] The full context of that statement addressed to defense counsel is: "Well, I think you know, Mr. Banks; that you saw in here yesterday that a kid under similar circumstances and with a different history and a far different attitude — and he tried his case, I am not punishing this boy one minute for trying his case, but I am punishing him for coming up here and lying and for his whole attitude. And I send a lot of people to Concord because I think they can be rehabilitated, but to send him there would cause difficulty and trouble there. He is or chooses to be or thinks he is a tough guy, so I say six to nine at Walpole."

large variety of factors, including the defendant's de-
meanor at the trial (see *Commonwealth* v. *Celeste,* 358
Mass. 307, 309-310 [1970]) — although it often happens
that the information set out in a probation report will
provide the judge with a better picture of the defendant
than the judge's own observations during the course of the
trial. See *Scott* v. *United States,* 419 F. 2d 264, 271 (D.C.
Cir. 1969). But the considerations are not unlimited. See
*Commonwealth* v. *Franks,* 369 Mass. 608, 609 (1976); *S. C.*
365 Mass. 74, 78, 82 (1974). And, "punishing him for com-
ing up here and lying" seems to us improper. In effect,
the sentence includes a punishment for perjury though
the defendant had not been indicted for perjury (see *Jones*
v. *Robbins,* 8 Gray 329, 342-345 [1857]) and though no
such charge had been proved at a criminal trial. The point
has been well put in Judge Craven's separate opinion in
*United States* v. *Moore,* 484 F. 2d 1284, 1288 (4th Cir.
1973): "Since the offence of perjury is properly punishable
in a separate criminal proceeding, to allow a summary ad-
judication of guilt by the court denies the defendant every
constitutional and procedural safeguard to which he is en-
titled and which is inherent in indictment and trial. This
is judgment by hunch — without accusation and without
opportunity to defend."

Further, such a practice must inevitably chill a defend-
ant's right to testify in his own defense. Indeed, it puts a
particularly heavy burden on a claim of alibi by which a
defendant most unequivocally places his credibility at is-
sue. Judge Bazelon, in the *Scott* case, 419 F. 2d at 269,
puts the matter thus: "Of course a defendant has no con-
stitutional right to lie, however much we may sympathize
with his too human temptation. But the defendant does
have a right to testify in his own defense. In doing so, he
risks the jury's disbelief. If he in fact fails to convince the
jurors, conviction and punishment will follow. If the Gov-
ernment for whatever reason concludes that prosecution
for perjury is appropriate, he risks punishment for that as
well. To allow the trial judge to impose still further pun-

ishment because he too disbelieves the defendant would needlessly discourage the accused from testifying in his own behalf." The *Scott* case has been cited with approval in *Poteet* v. *Fauver*, 517 F. 2d 393, 396 (3d Cir. 1975), *State* v. *Poteet*, 61 N. J. 493, 496 (1972), *People* v. *Anderson*, 391 Mich. 419, 423 (1974), *People* v. *White*, 130 Ill. App. 2d 775, 778 (1971), and *People* v. *Ortiz*, 22 Ill. App. 3d 788, 797 (1974).

Compare *LeBlanc* v. *United States*, 391 F. 2d 916, 917-918 (1st Cir. 1968), in which the court remanded for resentencing because the trial judge, after the defendant had been found guilty and before imposing sentence, asked the defendant whether he was in fact guilty. The court held that this was an improper inquiry because it might jeopardize the defendant's appellate and other postconviction rights. We think the analogous burden on the defendant's right to testify in his own behalf arising from the danger that a trial judge might determine that the defendant was lying should likewise preclude the use of that determination in sentencing. We see little difference between a greater sentence imposed because a defendant refused to expiate, by confessing before sentencing, what the trial judge considered a false claim of innocence and a greater sentence imposed specifically for what the trial judge believed was lying during the trial. Both practices would burden a defendant's rights. And though the rights involved are somewhat different we cannot say which are more worthy of protection. See the *Poteet* cases (61 N. J. at 495-496; 517 F. 2d at 395-396), in which the vice of a greater sentence because a defendant has not confessed after trial is treated as corollary to the vice of a greater sentence because the trial judge believed the defendant has committed perjury. But compare *Thomas* v. *United States*, 368 F. 2d 941 (5th Cir. 1966), and *United States* v. *Nunn*, 525 F. 2d 958, 960-961 (5th Cir. 1976), in which the Fifth Circuit appears to have treated these sentencing considerations separately.

The Second Circuit in *United States* v. *Hendrix*, 505

F. 2d 1233 (2d Cir. 1974), cert. den. 423 U. S. 897 (1975), has, with other courts,[4] refused to follow the *Scott* case. But even in the *Hendrix* case, the court held that a sentencing judge should not take into consideration his belief that a defendant was lying unless the judge had made the determination beyond a reasonable doubt. This may go part way in answering Judge Craven's objection, quoted above, that sentencing on the basis of such a belief is "judgment by hunch"; it does not meet the point that a defendant is entitled to a determination beyond a reasonable doubt by a jury and not by a judge.[5] Nor, in our view, does it sufficiently obviate the burden thus put on the right to testify.

Although "it is not a function of this court to review an otherwise lawful sentence which is within the limits of the applicable statutory provisions . . ., where it appears as it does here that a defendant was sentenced for a crime other than that of which he was convicted it is within the appellate power of this court to vacate the sentence and to take steps necessary to correct the error." *Commonwealth* v. *Franks,* 365 Mass. 74, 81 (1974); *S. C.* 369 Mass. 608 (1976). See *Commonwealth* v. *Eaton,* 2 Mass. App.

---

[4] The *Hendrix* case cites (505 F. 2d at 1236) *Humes* v. *United States,* 186 F. 2d 875, 878 (10th Cir. 1951), *United States* v. *Levine,* 372 F. 2d 70, 74 (7th Cir. 1963), *United States* v. *Wallace,* 418 F. 2d 876, 878 (6th Cir. 1969), *United States* v. *Cluchette,* 465 F. 2d 749, 754 (9th Cir. 1972), and *United States* v. *Moore,* 484 F. 2d 1284, 1287 (4th Cir. 1973). It has been followed in *United States* v. *Nunn,* 525 F. 2d 958, 960-961 (5th Cir. 1976). Accord, *Hess* v. *United States,* 496 F. 2d 936, 938-939 (8th Cir. 1974). See also *People* v. *Quarles,* 182 Colo. 321, 324 (1973); *Johnson* v. *State,* 21 Md. App. 214, 222-223 (1974), sentence vacated on other grounds, 274 Md. 536 (1974); *State* v. *Schilz,* 50 Wis. 2d 395, 399-405 (1971); *Lange* v. *State,* 54 Wis. 2d 569, 575-577 (1972); Dawson, Sentencing, 174-177 (1969); Pilot Institute on Sentencing, 26 F. R. D. 231, 287 (1960).

[5] Also compare *United States* v. *Moore,* 484 F. 2d at 1288, in which the court upheld a sentence which took into consideration that the defendant had testified falsely but in which the court said "[i]t is better in the usual case for the trial judge who suspects perjury to request an investigation. Then, if the facts warrant it, the United States Attorney may institute prosecution for this separate and distinct crime."

Ct. 113, 119 (1974). Accordingly, we remand the case to the Superior Court for resentencing.

*So ordered.*