COMMONWEALTH *vs.* STEPHEN GRESEK.

Essex.   October 4, 1983. — January 23, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Sentence.

The record in a criminal case did not support the defendant's contention
    that in sentencing the defendant the judge was improperly influenced
    by the defendant's exercise of his right to a trial de novo and his right
    to remain silent when questioned by a police officer. [827-828]
In determining the sentence to be imposed on a criminal defendant who
    had testified in his own behalf, the judge erred in taking into consider-
    ation his belief that the defendant had committed perjury during the
    trial. [829-832] LYNCH, J., concurring; NOLAN, J., dissenting.

COMPLAINT received and sworn to in the Lawrence Divi-
sion of the District Court Department on May 17, 1982.

On appeal to the Central Northern Essex Division for jury
trial the case was tried before *William H. Sullivan,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*John J. Todisco, Jr.,* for the defendant.
*Dyanne Klein Polatin,* Assistant District Attorney, for the
Commonwealth.

LIACOS, J.   On August 12, 1982, following a jury trial in
the Haverhill Division of the District Court Department,
the defendant, Stephen Gresek, was found guilty of operat-
ing a motor vehicle while under the influence of an intoxi-
cating liquor.   A judge of the District Court sentenced the
defendant to thirty days in a house of correction; ten days
committed time, and the balance suspended for one year.
The defendant filed an appeal with the Appeals Court and
also obtained from that court a stay of his sentence pending

the determination of his appeal.[1]  This court granted the application of the Commonwealth for direct appellate review.

The defendant presents three arguments in support of his contention that the trial judge committed reversible error in imposing his sentence.  Initially, the defendant claims that the judge, in determining the penalty to impose for the conviction, improperly considered the defendant's alleged perjury while testifying in his own behalf.  The defendant further argues that the judge, in imposing the sentence, unconstitutionally retaliated against the defendant for invoking his right to a trial de novo before a jury following his bench trial conviction.  Finally, the defendant maintains that the judge, in sentencing, impermissibly considered the defendant's alleged silence during his prearrest confrontation with police officers, in violation of the defendant's constitutional right to remain silent. .

The Commonwealth has asked us to adopt the principle of *United States* v. *Grayson,* 438 U.S. 41 (1978), which permits trial judges to use as one factor in sentencing their belief that a defendant has lied while testifying.  The Commonwealth also contends that, as evidenced by the record, the judge neither retaliated against the defendant for exercising his right to a de novo trial nor punished the defendant for his silence during the encounter with the police officers.

In accordance with our decisions rendered today in *Commonwealth* v. *Coleman, ante* 797 (1984), and *Commonwealth* v. *Souza, ante* 813 (1984), we conclude that a judge cannot consider a defendant's alleged perjury while testifying in determining the sentence for a crime.  Since the record abundantly demonstrates that the judge based Gresek's penalty on his belief that the defendant lied under oath, we vacate the sentence and order that the defendant be resentenced.

---

[1] The judge of the District Court had denied the defendant's initial motion to stay his sentence, as well as the defendant's motions to revise and revoke, and for postconviction relief.

Having so concluded, we need not consider the other contentions of the defendant. We note, however, that the record does not demonstrate that the judge retaliated against the defendant for invoking his right to a trial de novo, or that the judge penalized the defendant for his alleged silence during the confrontation with the police officers.[2]

We summarize the facts that are relevant to the issues to be considered on direct appellate review. Additional details concerning the judge's statements on the record will be referred to in our discussion of the specific allegations of error. The defendant was arrested for operating a motor vehicle while under the influence of intoxicating liquor, operating an unregistered and uninsured motor vehicle, and unlawfully attaching license plates. The defendant admitted to sufficient facts for a finding of guilt as to the latter charges. Following a bench trial at the Lawrence Division of the District Court Department, he was found guilty of driving a vehicle while intoxicated. The judge imposed a fine of $125. See G. L. c. 90, § 24.[3] The defendant invoked his right to appeal by way of a trial de novo in the District Court to a jury of six. See G. L. c. 218, § 27A.

During the jury trial, there was evidence of the following facts. On May 17, 1982, at approximately 1:30 A.M., two Andover police officers observed the defendant's automobile occasionally veering into the opposite travel lane and then back into the correct lane. The officers followed the vehicle until it turned into a driveway. Two people alighted from the vehicle and headed toward a house. The officers were unable to determine which of the two persons had been the

---

[2] The defendant makes no claim that the issue of his alleged silence was improperly considered by the jury who subsequently found him guilty. The judge charged the jury without objection, and the defendant makes no claim of error here as to that charge.

[3] General Laws c. 90, § 24 (1) (a) (1), as appearing in St. 1982, c. 373, § 2, provides in part: "Whoever . . . operates a motor vehicle while under the influence of intoxicating liquor . . . shall be punished by a fine of not less than one hundred nor more than one thousand dollars, or by imprisonment for not more than two years, or both."

operator of the vehicle. When one of the officers approached the vehicle with a flashlight, the defendant appeared from behind the house with his arms raised, identified himself, and said "That's my car." The defendant indicated that the other person, who was behind the house, was his friend.

The officer who spoke with the defendant noticed that he smelled of alcohol. The police officers testified that one of them asked the defendant whether he was the operator of the vehicle, and that the defendant replied affirmatively.

The officers testified that following the conversation with the defendant they conducted a pat-down search of the defendant, asked him for his registration, and conducted field sobriety tests on him. After forming an opinion based on their observations both before and during the tests that Gresek had been operating a vehicle while under the influence of alcohol, the officers arrested the defendant.

At trial, the defendant testified both on direct and on cross-examination that he had not been driving the vehicle and that he did not state to the officers that he had been driving. He testified that his friend had been driving the vehicle.[4] Following the cross-examination, the judge excused the jury. The judge then asked the defendant whether he understood that he was under oath, and the defendant replied that he did. After the judge questioned the defendant concerning his previous testimony, the defendant reiterated that he had not been operating the vehicle, nor had he given such information to the police officers.[5]

When the jury returned a verdict of guilty, the judge sentenced the defendant to thirty days in a house of correction; ten days committed time, and the balance suspended for one year. The defense counsel questioned the severity of the sentence imposed for a first vehicular offense in the absence of a criminal record. Repeatedly, the judge expressed his belief that the defendant had lied flagrantly in the course of

---

[4] The defendant's friend did not testify at the trial.

[5] Defense counsel objected to this line of questioning by the trial judge, claiming that it intimidated the defendant.

testifying, and that these incidents of perjury warranted a harsh punishment.[6] Specifically, the judge disbelieved the defendant's claims that when the police officers observed his vehicle he was not driving, and that he had never told the officers that he was driving at that time. In refusing to consider a less severe penalty, the judge told defense counsel that the defendant's false testimony constituted a "mockery" of the judicial system.

1. *Judicial vindictiveness.* In support of his contention that the trial judge retaliated against him for exercising a statutory right of de novo appeal, the defendant notes particular comments made by the judge during the sentencing hearing. We quote these remarks in the margin.[7]

---

[6] The record indicates that the judge did not weigh the mitigating factors presented by the defense counsel in meting out the penalty. The defense counsel pointed out that Gresek had never been arrested before, that he ran a business, cared for a family, and was a fine citizen. The judge believed that the factors favoring a more lenient sentence were outweighed by the defendant's perjury while on the witness stand. The only indication that the judge considered the defendant's previously clear record was the statement that he would have sentenced the defendant to "ninety days and forty-five days committed" had there been a prior conviction.

[7] The relevant colloquy between the judge and the defense counsel proceeded as follows:

THE JUDGE: "I think that on the evidence he was lying like hell."

DEFENSE COUNSEL: "Your Honor —"

THE JUDGE: "You know, I've had three or four cases where they've said they hadn't driven the car, where attorneys who I have great respect for (inaudible) will get up and on the basis of what his client has told him, argue strenuously that the Commonwealth hasn't proven their case beyond a reasonable doubt. And *I find that offensive to the whole judicial system, not what the attorney does, but what the Defendant does.*

"Once you take the case, you have the obligation to go all the way as the attorney, and he consistently told you that he wasn't driving, there is no reason for you not to believe him, no reason at all.

"But *I find when a Defendant does that to this judicial system, I resent it.*" (Emphasis added.)

DEFENSE COUNSEL: "I understand, your Honor."

" . . . .

THE JUDGE: "We don't have a judicial system that will stand (inaudible) that the Defendant can tell a ridiculous story and then plead that the Commonwealth hasn't proved their case beyond a reasonable doubt.

A judge violates principles of due process by penalizing a defendant for invoking a statutory right to appeal a conviction. *North Carolina* v. *Pearce,* 395 U.S. 711, 724 (1969). *Commonwealth* v. *Tirrell,* 382 Mass. 502, 507-508 (1981). There is, however, no absolute prohibition on a judge's imposing a harsher sentence when a defendant has appealed a conviction and has been reconvicted. *North Carolina* v. *Pearce, supra.* The Commonwealth argues that the only reasonable inference to be drawn from the judge's statements is that he was outraged at the defendant's alleged perjury on the witness stand. We interpret all of the judge's remarks which implied that the defendant had misused, or taken advantage of, the judicial system, as expressing his irritation over the defendant's alleged perjury while testifying. When the judge stated that the defendant's conduct was offensive to the judicial system, he was equating his behavior to that of other defendants who had lied on the stand. Furthermore, the judge prefaced his comments, that the defendant had "take[n] advantage of" and "made a mockery of the judicial system," by stating that the defendant had lied flagrantly on the witness stand. We therefore agree with the Commonwealth's contention that no reasonable interpretation of the judge's statements evinces a motive by the judge to punish the defendant for exercising his right to a trial de novo.

2. *Pre-arrest silence.* The defendant argues that, at the disposition hearing, the judge improperly inferred the defendant's guilt and enhanced his sentence based, in part, on the defendant's claim that he had not exculpated himself

---

"I do find it offensive, you know. I was fully intending to give him forty-five days until I saw — the lack of his record."

DEFENSE COUNSEL: "No prior record at all, your Honor."

THE JUDGE: "If there was anything else at all, he'd be going away — the sentence was going to be ninety days and forty-five days committed, but *I feel that he should have a taste of the House of Correction because he came in here and made a mockery of the judicial system*" (emphasis added).

DEFENSE COUNSEL: "Well, your Honor, —"

THE JUDGE: "No doubt in my mind that he was lying, no doubt at all."

when questioned by the police officers. According to the defendant, the judge penalized him for invoking his constitutional right to remain silent. We need not discuss this claim at length, as it is not borne out by a reading of the transcript. The error committed by the judge is not on this ground, but in his insistence on punishing the defendant more severely because he believed that the defendant had lied while testifying at trial. The judge's remarks concerning the defendant's alleged silence during the confrontation with the police officers were an integral part of the judge's repeated assertions that the defendant had perjured himself by testifying that when the police observed his vehicle it was his friend, and not he, who was operating the vehicle. In this context, the judge stated: "We've got the statement of the police officer and got the fact that he didn't tell any one of at least three police officers that he wasn't driving. Now, *even if I had some doubt about the police officer's statement, which I don't, I can't believe that a Defendant with a .09 reading didn't have brains enough to tell the police that he wasn't driving. . . .* He certainly would know that if he was being accused of driving under the influence that he would certainly speak up and say, I wasn't driving." (Emphasis added.)

The judge's remarks clearly indicate that he both disbelieved the defendant's testimony and considered as true the officer's claim that the defendant had told him that he was driving the vehicle. It is thus illogical to conclude that the judge enhanced the defendant's sentence, based on his allegation of silence when the judge actually disbelieved the defendant's testimony and concluded that the defendant had admitted to operating the automobile.

We now turn to the issue whether reversible error occurs when a trial judge imposes sentence for a substantive offense based, in part, on a belief that the defendant committed perjury at trial.

3. *Improper sentencing procedure.* The defendant contends that the judge committed reversible error by considering the defendant's alleged perjury in determining the

sentence to impose for the misdemeanor conviction. The Commonwealth concedes that the judge, in sentencing, took note of the defendant's alleged prevarication on the witness stand. The Commonwealth, however, asks us to follow the principle enunciated in *United States* v. *Grayson,* 438 U.S. 41 (1978), which permits a judge to determine whether a defendant has lied flagrantly under oath, and to consider this factor as probative of a defendant's societal attitudes and chances for rehabilitation. See *id.*

As a matter of public policy, and in accordance with our State law, we have decided today in two other decisions, that a judge cannot consider the alleged perjury of a defendant in imposing a sentence. See *Commonwealth* v. *Coleman, supra* at 808; *Commonwealth* v. *Souza, supra* at 818. We need not repeat our discussion of our reasons here. In both the *Coleman* and *Souza* cases a judge determined that the defendants had committed perjury on the witness stand and considered this as a factor in imposing his sentences for separate, substantive offenses. *Commonwealth* v. *Souza, supra* at 815. *Commonwealth* v. *Coleman, supra* at 799-800. *Commonwealth* v. *Murray,* 4 Mass. App. Ct. 493, 495-496 (1976).[8]

Guided by the principles we have stated today in *Coleman* and *Souza,* we conclude that the trial judge substantially prejudiced the defendant's rights by basing his penalty on the assumption that the defendant had perjured himself at trial.[9] The record clearly demonstrates that the judge in

---

[8] In the *Souza* case, the judge stated that he was punishing the defendant, in part, for "the bold lie" that he told on the witness stand. *Commonwealth* v. *Souza, supra* at 815. The judge in *Commonwealth* v. *Murray, supra,* referred to the defendant's testimony as "false" and "foolish," and expressed his anger at the defendant's attempt to "kid" him with his account of the incident. In *Commonwealth* v. *Coleman, supra* at 799, the judge stated that he was "offended" by the defendant's "'attempt to kid' him" and described the defendant's claim of innocence as outrageous."

[9] In support of its argument, the Commonwealth has recognized correctly that appellate courts should encourage trial judges to articulate candidly and thoroughly on the record their reasons for imposing sentences. As the dissenters in *Grayson* noted, the problem of a judge's considering a defendant's alleged perjury in sentencing is that such conduct

this case sentenced the defendant to a term in jail because of his belief that the defendant had lied on the witness stand. The judge definitively stated: "I think that on the evidence [the defendant] was lying like hell," there was "[n]o doubt in my mind that he was lying," and "I sentenced [the defendant] to committed time on the basis of my strong feeling that he was committing perjury in this courtroom."

The judge also refused to consider any mitigating factors presented by the defense counsel in deciding what penalty to impose. See Mass. R. Crim. P. 28 (b), 378 Mass. 898 (1979). Although the defendant had a previously clean record, held down a steady job, and supported a family, the judge dismissed all these factors, claiming that they were outweighed by the defendant's "coming into this courtroom" and telling "a ridiculous story." The judge further remarked that, had there been any prior record, the defendant would have been sentenced to a longer committed term, but he believed that the defendant "should have a taste of the House of Correction because he came in here and made a mockery of the judicial system."

---

will receive appellate review "only because of the trial judge's laudable explication of his reasons for imposing the sentence in this case. In many cases it would be impossible to discern whether a sentencing judge had been influenced by his belief [about the evidence], since there is no requirement that reasons be given." *United States* v. *Grayson, supra* at 55-56 n.1 (Stewart, J., dissenting). We agree that "[w]e should not adopt an unrealistic view of the sentencing process that can only deter trial judges from articulating their reasons fully, because those reasons allow correction when the facts relied upon are indeed 'inaccurate.'" *United States* v. *Campbell*, 684 F.2d 141, 154 (D.C. Cir. 1982). See *United States* v. *Marshall*, 519 F. Supp. 751 (E.D. Wis. 1981), aff'd, 688 F.2d 842 (7th Cir. 1982). We believe that if appellate courts continue to allow trial judges to utilize wide discretion in the factors that they consider in making sentencing decisions, *Williams* v. *New York*, 337 U.S. 241, 246-247 (1949), *Commonwealth* v. *Celeste*, 358 Mass. 307, 309-310 (1970), the conscientious trial judge will continue to present candidly and thoroughly on the record the underlying reasons for a sentence. We cannot believe that, in order to preserve judges' candor in outlining the reasons for a sentencing decision, we must permit them to make an unreviewable determination of perjury not derived from an indictment, a trial, or a finding beyond a reasonable doubt.

Because the judge decided to impose sentence for the misdemeanor conviction based on his assumption that the defendant had committed perjury at the trial, we vacate the sentence and order that the defendant be resentenced.[10]

*So ordered.*

LYNCH, J. (concurring). The majority opinion relies upon *Commonwealth* v. *Coleman, supra* 797, and *Commonwealth* v. *Souza, supra* 813, in which I dissented. Here I agree with the court that the record demonstrates that in sentencing the judge relied solely on his perception of the defendant's perjury during trial. Such reliance is impermissible under the teaching of *United States* v. *Grayson, supra* at 53, 55, which I would apply here as well as in *Coleman* and *Souza.*

NOLAN, J. (dissenting). I dissent. For reasons set forth in my dissent in *Commonwealth* v. *Coleman, supra* 797, I would hold that where a judge is satisfied beyond a reasonable doubt that a defendant has committed perjury in his presence, the judge is entitled to consider the perjury in sentencing the defendant, as one factor among others in assessing the defendant's prospects for rehabilitation and restoration to a useful niche in society.

---

[10] Even if we accepted the principle espoused by the *Grayson* Court, the conduct of the trial judge would still amount to an unlawful sentencing procedure. *Grayson* legitimized a judge's consideration of a defendant's prevarication as *one* factor to utilize in arriving at an individualized sentencing decision. *United States* v. *Grayson, supra* at 53, 55. The Court recognized that this finding must be assessed in light of all of the other information concerning the defendant's character and background in order to evaluate correctly his societal attitudes and chances for rehabilitation. *Id.* The judge thus employed an improper sentencing procedure under the *Grayson* decision by relying on his belief that the defendant perjured himself as the sole factor in imposing a jail sentence.