**UNITED STATES of America, Plaintiff,**

v.

**ONE FORD 198X MUSTANG, VEHICLE IDENTIFICATION NO. 1FAB42E5JF290177, Defendant.**

**Civ. A. No. 89–2865–Y.**

United States District Court,
D. Massachusetts.

Oct. 23, 1990.

Laurie Sartorio, Asst. U.S. Atty., for plaintiff.

Robert Wheeler, McBride, Wheeler & Widegren, Boston, Mass., for claimant Bruno Pietrolungo.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. BACKGROUND

The plaintiff United States brings this forfeiture claim against the defendant 198X Mustang VIN 1FAB42E5JF290177 ("Mustang") before this Court pursuant to 21 U.S.C. § 881(a)(4), which reads as follows:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

(3) All property which is used, or intended for use, as a container for property described in paragraph in (1), (2), or (9).

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the

transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).... 21 U.S.C. § 881(a) (1990). Claimant Bruno Pietrolungo ("Pietrolungo"), the present owner of the vehicle in question, moves this Court for summary judgment on his claim to the Mustang. In response, the United States has opposed Pietrolungo's motion and has filed a cross-motion for summary judgment on its forfeiture claim.

The United States' forfeiture claim arises from the August 22, 1989 arrest of Pietrolungo in the defendant Mustang. Massachusetts law enforcement officials had observed Pietrolungo in his Mustang in the parking lot of a known drug area and had approached Pietrolungo and the Mustang after noticing what they considered suspicious activity. The subsequent search and seizure of the Mustang produced .04 grams of cocaine. During an evidentiary hearing on Pietrolungo's motion to suppress during the course of the state's criminal prosecution, Justice Neil Collichio of the Lowell District Court apparently [1] held that Mas-

---

1. The word "apparently" is appropriate here due to the utter inadequacy of the tape recorded "record" of the proceedings in the Lowell District court. At the crucial point where Justice Colicchio explains the legal reasoning undergirding his ruling, the transcript has reference to the case of "[inaudible] v. *Ohio.*" In context, this Court assumes—but is by no means sure—that my state colleague made reference to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See* City, Hughes, Rose, Shannon, and Young, "Search and Seizure—a Symposium," 54 Mass.L.Q. 203 (1969).

While the District Courts of Massachusetts are courts of record, sadly they are equipped only with tape recorders rather than the services of professional court reporters. The inadequacies of such an outmoded approach to the official court record are, not surprisingly, the stuff of many stories at the bar. More important, inaudible portions of the official transcript have been noted in at least the following Massachusetts cases: *Commonwealth v. Bohannon,* 385 Mass. 733, 738, 434 N.E.2d 163, 167 (1982) (motion to suppress based, *inter alia,* on the claim that the tape of a District Court probable cause hearing "was unclear, inaudible, and confusing"); *Commonwealth v. Schatvet,* 23 Mass. App.Ct. 130, 131, 499 N.E.2d 1208, 1209 (1987) ("the transcript is riddled with 'inaudibles'"). *See Commonwealth v. Gresek,* 390 Mass. 823, 461 N.E.2d 172 (1984); *Commonwealth v. Johnson,* 28 Mass.App.Ct. 453, 551 N.E.2d 1204 (1990); *Commonwealth v. Plowman,* 28 Mass. App.Ct. 230, 548 N.E.2d 1278 (1990); *Commonwealth v. Galvin,* 27 Mass.App.Ct. 150, 535 N.E.2d 623 (1989); *Commonwealth v. Balboni,* 26 Mass.App.Ct. 750, 532 N.E.2d 706 (1989); *Commonwealth v. Kelley,* 25 Mass.App.Ct. 180, 516 N.E.2d 1188 (1987); *Commonwealth v. Roucoulet,* 22 Mass.App.Ct. 603, 496 N.E.2d 166 (1986); *Commonwealth v. Fudge,* 20 Mass. App.Ct. 382, 481 N.E.2d 199 (1985); *Commonwealth v. Rosenfield,* 20 Mass.App.Ct. 125, 478 N.E.2d 165 (1985); *Commonwealth v. Porter,* 15 Mass.App.Ct. 331, 445 N.E.2d 631 (1983); *Commonwealth v. Cavanaugh,* 12 Mass.App.Ct. 543, 427 N.E.2d 496 (1981).

Tape recording administrative proceedings has also posed problems to meaningful judicial review. *See Caroline T. v. Hudson School District,* 915 F.2d 752, 755 (1st Cir.1990), citing *Edward B. v. Rochester School District,* No. C86-7-L, order (D.N.H. Nov. 17, 1987) (ordering adequate tapes and quoting an apparently undisputed affidavit that "it is impossible to produce a *verbatim* transcript of administrative hearings based upon the state's tapes. There are gaps in what has been recorded, speakers are sometimes inaudible (cannot be heard), and speakers are sometimes indiscernible (voices can be heard but words cannot be understood)"); *O'Brien v. Director of the Division of Employment Security,* 393 Mass. 482, 472 N.E.2d 253 (1984); *Reissfelder v. Director of the Division of Employment Security,* 391 Mass. 1003, 460 N.E.2d 604 (1984).

Most important, reliance on a totally mechanical approach to the preparation of the official court record appears—in Massachusetts at least—significantly to erode public confidence in the integrity of the judicial process. *See e.g.,* series *Cut-Rate Justice,* The Boston Globe, Sept. 25, 1990, at 11, col. 3:

No tape [recording of the proceedings] could be produced for more than half of the 30 cases the Globe requested from the Boston [Municipal C]ourt.... [O]nly one of 11 tapes of [a particular judge's] proceedings that were requested could be found.

Many of the 16 cases for which there were no tapes were heard in courtrooms equipped with a second button that a judge can press to turn off the tape. In addition, the Globe witnessed cases come to an end during hushed talk at the bench, which a recorder, even if running, could not have picked up.

Similar concerns have been expressed in the federal judicial system with the use of tape recorders as a source of the official record:

When the policy of taking records of magistrates' proceedings was developed, it was assumed that few transcripts would be requested. Thus, additional court reporter positions were not obtained to record magistrates' proceedings. Instead, magistrates were authorized to purchase electronic sound recording equipment to use in their courtrooms. No operator positions were requested to operate the recording equipment and log the proceed-

sachusetts law enforcement officials had executed the August 22nd search and seizure in violation of the Fourth Amendment to the United States Constitution and therefore he suppressed the evidence (i.e., the cocaine). Subsequently, the state prosecutor filed a notice of *nolle prosequi.*

Pietrolungo argues that the United States may not rely on the evidence excluded by the Lowell District Court to establish probable cause to forfeit the Mustang. Furthermore, Pietrolungo, invoking the doctrine of collateral estoppel, asserts that the Lowell District Court's order suppressing the evidence is binding upon the United States. In response, the United States argues that evidence obtained as a result of an unlawful search and seizure may be introduced in a civil forfeiture proceeding, and that the requirements of collateral estoppel are not satisfied where the United States was neither a party nor was in privity to a party in the original action.

## II. DISCUSSION

At first blush, this case is deceptively straightforward. The Court must necessarily consider what effect a Fourth Amendment violation could have on the admissibility of evidence in this civil forfeiture proceeding. The Court must determine whether the Fourth Amendment exclusionary rule applies to civil forfeiture proceedings generally and if it should apply to this proceeding specifically. If not, the cocaine is admitted, its presence establishes probable cause for forfeiture, and the United States is entitled to summary judgment. If the exclusionary rule theoretically does apply to forfeiture proceedings, however, the Court will have to consider whether the United States is collaterally estopped by the prior state court order to suppress the evidence. Resolution of the estoppel issue in favor of Pietrolungo (i.e., that the United States is collaterally estopped in its forfeiture claim by the state court order to suppress the illegally seized evidence) would dispose of this action because the United States has no other evidence with which to establish probable cause in its forfeiture action. As will be seen, proceeding through this analysis is somewhat more complex.

---

ings. More and more proceedings before magistrates, however, now require a transcribed record. Tapes of magistrates' proceedings, unattended by an operator, are difficult to transcribe since there is no log sheet prepared during the proceedings indicating who is speaking. Due to the problems encountered in transcribing magistrates' tapes, many transcription firms refuse to prepare such transcripts. When transcripts are required, courts must use a contract court reporter or a staff court reporter. Unattended tape recorders have proven to be inadequate in keeping a verbatim record which can be transcribed accurately and certified. The poor transcript quality of magistrates' proceedings has also impacted on the overall reputation of electronic sound recording. District judges are less inclined to elect electronic sound recording systems based on their past experience with transcripts produced from magistrates' tapes.

Over the years, magistrates' proceedings have become more complex and the need for transcripts for review or appeals has increased. Because of the new requirements for transcripts imposed by pre-detention hearings and increased use of magistrates in civil consent cases [28 U.S.C. § 636(c)], courts have requested that operator positions be provided to take adequate electronic records that can be transcribed easily and accurately.

Existing staff resources are not capable of recording and logging magistrates' proceedings.
Budget Estimates for Fiscal Year 1992 as submitted to the Budget Committee of the Judicial Conference, July 27–28, 1990, page 5.59.

Of course, in those few areas where tape recorders are used as a source of the official record of proceedings in a United States District Court, the recorder is operated by a specialist whose primary duty is the maintenance of the official record. "The Court Reporters Act was amended in 1983 to permit each United States District Judge to choose the method [i.e. court reporter or tape recorder] by which court proceedings would be recorded in his or her courtroom." Summary to Court Reporters section, II Federal Courts Study Committee Working Papers and Subcommittee Reports, July 1, 1990 (detailing the tension between the Administrative Office of the United States Courts and the United States Court Reporters Association concerning which method is preferable). Today, over 90% of these judges choose to work with professional court reporters. Many court reporters now use computer aided transcription to prepare promptly the official record of court proceedings, and on-line computer transcription (the computer integrated courtroom) is a reality in certain courtrooms. Strand, *The Courtroom of the Future,* 28 Judges' J. 8 (1989).

A. Fourth Amendment Rights in Civil Forfeiture Proceedings.

■ In *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), the Supreme Court held that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *Id.* at 223–24, 80 S.Ct. at 1447. For that reason, this Court is not bound by the Lowell District Court's order granting Pietrolungo's motion to suppress the evidence obtained during the August 22, 1989 arrest of Pietrolungo, even though the state apparently held that the search had violated the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures. Upon the present record, however, this Court cannot yet embark on the unsteady seas of Fourth Amendment search and seizure analysis.

■ First, this Court must determine whether or not the *results* of any such Fourth Amendment analysis could affect the disposition of this civil forfeiture action. One possible effect of the finding of an unconstitutional search and seizure is the judge-made remedy of exclusion of the illegally obtained evidence. *See generally United States v. Calandra*, 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974) (The purpose of the exclusionary rule is to "deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.... In sum, the [exclusionary] rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect, rather than a personal constitutional right of the party aggrieved."). Before considering whether to exclude the cocaine, this Court must determine whether the exclusionary rule applies to civil forfeiture proceedings.

■ The Supreme Court addressed the specific issue now before this Court in *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). The Supreme Court granted certiorari "to consider the important question of whether the constitutional exclusionary rule enunciated in *Weeks v. United States*, 232 U.S. 383, [34 S.Ct. 341, 58 L.Ed. 652] and *Mapp* [*v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] applies to forfeiture proceedings of the character involved" in that case. *Id.* at 696, 85 S.Ct. at 1248. By using the phrase "of the character involved," the Court was referring to situations where the object of the forfeiture is what it deems "derivative contraband." *Id.* at 699, 85 S.Ct. at 1250. Contraband is categorized as "derivative contraband" if the possession of such contraband (i.e., an automobile in *Plymouth Sedan* and the case at hand), cannot be considered even "remotely criminal." *Id.* The *Plymouth Sedan* court relied heavily upon *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), characterizing it as "'[t]he leading case on the subject of search and seizure,'" in reaching its holding that the exclusionary rule applies in forfeiture proceedings. *Plymouth Sedan*, 380 U.S. at 696, 85 S.Ct. at 1248 (quoting *Carroll v. United States*, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 [1925]).

Likewise, *Plymouth Sedan* relied primarily on the *Boyd* Court's reasoning that "a forfeiture proceeding is quasi-criminal in nature." *Id.* at 700, 85 S.Ct. at 1250. In *Boyd*, Justice Bradley wrote that forfeiture proceedings, "though they may be civil in form, are in their nature criminal." *Boyd*, 116 U.S. at 634, 6 S.Ct. at 534. The reasoning in *Boyd*, and subsequently in *Plymouth Sedan*, is that it would be unjust to rob a claimant such as Pietrolungo of the protections guaranteed under the Fourth Amendment of the Constitution merely because the posture of the claim now against him is civil, rather than criminal, and when, in fact, the civil claim derives from the criminal claim. *See Boyd*, 116 U.S. at 634, 6 S.Ct. at 534; *Plymouth Sedan*, 380 U.S. at 701, 85 S.Ct. at 1251. Thus, the *Boyd* Court concluded that "forfeitures ... are of this quasi-criminal nature ... [and] are within the reason of criminal proceedings

for all purposes of the Fourth Amendment of the Constitution...." *Id.*[2]

The First Circuit, as early as 1938, implied the applicability of the exclusionary principle to a forfeiture proceeding in holding that evidence obtained in violation of the Fourth Amendment cannot be the basis for a civil judgment. *Rogers v. United States*, 97 F.2d 691 (1st Cir.1938). Much more recently, the First Circuit explicitly has described 21 U.S.C. § 881, the forfeiture statute underlying the United States' claim, as a "punitive, quasi-criminal statute," *United States v. Pappas*, 613 F.2d 324, 328 (1st Cir.1979), again implying the applicability of the exclusionary rule. The First Circuit, however, has carefully bounded the applicability of the exclusionary rule in civil proceedings to forfeiture proceedings alone.

In *United States v. One 1975 Pontiac Lemans, Vehicle I.D. No. 2F37M56101227*, 621 F.2d 444 (1st Cir.1980), the First Circuit allowed forfeiture of the fruits of an illegal, warrantless seizure. The Court reasoned as follows:

> [I]t is not clear why an inadequacy in the process used to secure the initial possession would or should defeat the government's ultimate entitlement to the property as established by untainted evidence at a properly conducted forfeiture proceeding. It is one thing to deny the government the use, in a trial, of evidence arrived at as a result of illegal procedures, and another to divest the government of property to which it is entitled on the basis of *legally* obtained proof simply because of a purported initial mistake in the government's mode of taking temporary possession.

*One 1975 Pontiac Lemans*, 621 F.2d at 450–51. *Pontiac Lemans* is distinguish-

able from the facts in the present case because none of the evidence obtained from the allegedly illegal seizure was being used to strengthen the case for forfeiture. Thus, the Court reasoned that there was no connection between the warrantless seizure and the government's later forfeiture action. "There is simply no connection here between the warrantless seizure and the government's later-made case for possession. The latter was not a derivative of the former, as would be true in a typical Fourth Amendment suppression situation." *Pontiac Lemans*, 621 F.2d at 451. It follows that *Pontiac Lemans* was not an instance where preventing the forfeiture of the illegally seized property would serve the core purpose of the exclusionary rule.

Here, however, the present forfeiture action derives entirely from the former criminal action. Indeed, the evidence suppressed at the state level is the very basis of the United States' claim. If this Court finds the August 22nd search and seizure unconstitutional, "the government's right to the vehicle has ... been come at by exploitation of the ... unconstitutional seizure," *Pontiac Lemans*, 621 F.2d at 451 (citations omitted), and therefore this is the typical Fourth Amendment suppression situation hinted at in *Pontiac Lemans*. If the search and seizure is found to be unconstitutional, the evidence must be excluded. The cross-motion of the United States for summary judgment is thus denied.

## B. Collateral Estoppel.

■ Not satisfied with thwarting the motion of the United States, Pietrolungo goes further and presses for summary judgment himself on the ground that, notwithstanding *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669

---

**2.** The reliance on this "quasi-criminal" classification of civil forfeiture in the extension of the exclusionary principle to such forfeiture proceedings pervades the common law. Initially, the Supreme Court in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (holding that evidence obtained in violation of the Fourth Amendment by a state criminal law enforcement officer in good-faith reliance on a defective warrant would *not* be excluded from a federal, civil tax proceeding) seemed to contra-

dict *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), by asserting that "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Janis*, 428 U.S. at 447, 96 S.Ct. at 3029. However, the Supreme Court does recognize an exception, civil forfeiture proceedings, to this general rule of application, relying on *Plymouth Sedan* and *Boyd*. *Janis*, 428 U.S. at 447 n. 17, 96 S.Ct. at 3029 n. 17.

(1960), the United States is bound by the apparent ruling of the Lowell District Court that the Fourth Amendment has been violated and is collaterally estopped from pressing this forfeiture action.

Recently, the First Circuit has held that "rules of 'collateral estoppel' do not require federal courts in a federal forfeiture proceeding to apply a suppression decision that a state court reached in a state prosecution against the same party." *United States v. Land at 5 Bell Rock Rd.*, 896 F.2d 605, 610 (1st Cir.1990). The Court in *Land at 5 Bell Rock Rd.* cites the standards elaborated in *United States v. Bonilla Romero*, 836 F.2d 39 (1st Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988), and in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), concluding that in a federal forfeiture proceeding "a federal court is free to make its own determination, just as a second court is normally free to redetermine an issue when one of the parties before it was neither a party, nor in 'privity' with a party, in [the] first court proceeding." *Land at 5 Bell Rock Road,* 896 F.2d at 610.

■ The First Circuit has defined the requirements of collateral estoppel to require that the "party to be precluded from relitigating an issue decided in a previous litigation [must have been] either a party or in privity with a party to that prior litigation." *Bonilla Romero*, 836 F.2d at 43. Although neither the United States nor the Mustang were parties in the state suppression hearing—there the two parties were Pietrolungo and the Commonwealth of Massachusetts—Pietrolungo argues that the United States was in *privity* with the state law enforcement officials and thus is precluded from pursuing its forfeiture claim against the Mustang. Under the concept of privity articulated by the First Circuit in *Bonilla Romero*, "a non-party to an action nonetheless may be bound by issues decided there if it substantially controls, or is represented by, a party to the action ... [and] ... [t]here must be a 'substantial identity' of the parties such that the party to the action was the virtual representative of the party estopped." *Id.* (quoting *Chicago, R.I. & P. Ry. v. Schendel,* 270 U.S. 611, 621, 46 S.Ct. 420, 424, 70 L.Ed. 757 [1926] ). Finally, the determination of whether or not the Commonwealth of Massachusetts, a party to the original action, was the "virtual representative" of the United States is a question of fact subject to a case-by-case determination. *Bonilla Romero*, 836 F.2d at 43. The Court now turns to that determination.

Pietrolungo argues that the United States was in privity through its representation by the state's prosecutor. Pietrolungo cites *Bonilla Romero* to support his assertion that the United States' interests were represented by Massachusetts at the suppression hearing, since the state's sole objective was to persuade the Lowell District Court to deny the motion to suppress the cocaine; furthermore, federal prosecutors had reason to believe that a state district court judge, in this instance, would be deciding an issue perhaps dispositive of, or at least affecting, a federal prosecution. *See id.* at 44. Pietrolungo, however, ignores the holding in *Bonilla Romero*.

*Bonilla Romero,* too, involved a local suppression hearing. The Superior Court of Puerto Rico granted appellant's motion to suppress, and the Federal District Court held that the local court's order was not binding upon the federal court. The First Circuit affirmed, holding that there was no collateral estoppel, for "[t]he initial suppression hearing concerned purely local charges over which the federal enforcement officials had no authority and thus no interest." 836 F.2d at 44. In that case, the local and federal actions were both purely criminal in nature, yet, nonetheless, the First Circuit found that the requirements of collateral estoppel had not been met. Here, the federal forfeiture action is civil in nature, and the Supreme Court has stated explicitly that "[t]he time has come to clarify that ... collateral estoppel [does not bar] a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges." *U.S. v. One Assortment of 89 Firearms,* 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984). Therefore, it follows that collateral estop-

pel does not apply to a forfeiture action following a suppression order and a *nolle prosequi* on related criminal charges.

Pietrolungo claims further that the Commonwealth had been assisting the United States in this forfeiture action, in that one of the state law enforcement officials who testified at the state suppression hearing also was debriefed by the Drug Enforcement Agency (the "Agency") and provided an affidavit supporting the United States forfeiture action. Pietrolungo offers no further assertions as to the involvement of the United States in the state suppression hearing. Such minimal assistance clearly does not entail the degree of involvement necessary to preclude the United States' forfeiture claim. The United States neither " 'substantially control[led]' the state action [nor] w[as] 'virtually represent[ed]' by the state prosecutor." *Land at 5 Bell Rock Road,* 896 F.2d at 610 (quoting *Bonilla Romero,* 836 F.2d at 43). *Cf. Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (holding that the United States was bound by state court litigation because the United States "plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate the principles of estoppel").

Pietrolungo argues that the United States was aware that there was a state court proceeding that could affect the disposition of its forfeiture claim and thus should be precluded by the state court's order. Such an assertion is untenable and impractical. Were Pietrolungo's proposition to become law, federal prosecutors would be crushed under the burden of monitoring, and perhaps participating in, the disposition of state criminal proceedings so as to have some control over the disposition of any possible future federal forfeiture actions.

Finally, Pietrolungo invokes fairness, justice, and judicial economy as reasons to preclude the United States forfeiture action. The first two principles, however, are best served by an independent evidentiary determination of the Fourth Amendment issue, especially where the inadequate audio recording of the state court proceedings

has garbled the reasoning of the state court justice. As for the third—judicial economy—we are fortunate in the federal judicial system not yet to be so starved for resources that considerations of economy can outweigh concerns for fairness and justice. May we never sink to that extremity. The United States shall have its day in court. Pietrolungo's motion for summary judgment is denied.

## C. CONCLUSION

For the reasons expressed above, the Court DENIES the cross-motion for summary judgment brought by the United States; if this Court were to find a Fourth Amendment violation it is appropriate that the exclusionary rule apply to this civil forfeiture proceeding. Likewise, the Court DENIES Pietrolungo's motion for summary judgment; the United States is not precluded from prosecuting its forfeiture claim, and this Court shall schedule an evidentiary hearing on the Fourth Amendment issue.

SO ORDERED.