COMMONWEALTH *vs.* TYRONE MCFADDEN.

No. 98-P-2205.

Suffolk. February 17, 2000. - June 19, 2000.

Present: KASS, GREENBERG, & LENK, JJ.

*Practice, Criminal,* Sentence.

The record of the sentencing hearing of a defendant clearly showed that the
  judge imposed the sentences as punishment for the defendant's alleged
  false testimony at trial: the case was remanded for resentencing before
  another judge. [443-444]

COMPLAINT received and sworn to in the Roxbury Division of
the District Court Department on April 9, 1997.

The case was tried before *Edward R. Redd,* J.

*Robert A. O'Meara* for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Com-
monwealth.

GREENBERG, J. Tyrone McFadden, the defendant, was convicted
after a one-day trial before a jury of six in Roxbury District
Court of distribution of a Class B substance (G. L. c. 94C,
§ 32A[*a*]), and distribution of a Class B substance within 1,000
feet of a school (G. L. c. 94C, § 32J). On appeal, the defendant
raises the question whether he received a harsher sentence than
he otherwise would have because the judge thought the
defendant committed perjury during the course of his own
testimony.

From the police testimony at trial, the following events could
be found to have occurred. George Cardozza, a Boston police
officer, was part of "Operation Wheelchair," a police effort to
rid the Fairland Street neighborhood in Roxbury of crack
cocaine dealers. Cardozza worked the territory from February,
1997, until the early part of April, 1997, when the defendant
and two women were arrested after a search of an apartment at

No. 5 Fairland Street. It was, however, a February encounter that was the reason for the defendant's arrest.

At about 5:30 P.M. on February 13, 1997, Cardozza sat in his unmarked vehicle and had conversation with a young woman about purchasing some drugs. She took the bait as they walked to No. 5 Fairland Street. From the hallway, she hollered to someone upstairs, "Bring me two." Cardozza knew that phrase meant two rocks of crack cocaine. According to Cardozza, the defendant came down and delivered the goods to him, saying that the items were "the shit" and "the bomb," which in the vernacular meant that the quality was high. Moments later, Cardozza handed the defendant a twenty-dollar bill. Both the defendant and his female companion left the scene. As mentioned, the defendant was arrested in April outside of No. 1 Fairland Street[1] after the search of No. 5 where the police arrested two women, one of whom was identified by Cardozza as the defendant's accomplice during the February 13 deal, the other as the woman who had sold Cardozza drugs in subsequent "Operation Wheelchair" buys.

Testifying on his own behalf, the defendant was adamant that he was not at the scene of the crime on February 13. He stated that he used to live at No. 1 Fairland Street with his mother, and still visits her there often, but moved with his girlfriend to Seaver Street in December, 1996. He proffered his mother as a witness to verify that he was not living with her in February, 1997. The defendant's February 13 accomplice was not called to testify, but the other of the two women, who previously had pleaded guilty to distribution of cocaine as a result of the sting operation, took the stand and said that the defendant had not sold any drugs.

After the jury returned the guilty verdicts, the judge, who had conducted an exemplary trial, thanked the members of the jury for their service and took up the matter of sentencing the defendant. The prosecutor recommended that the defendant be given a two-year sentence on the distribution of cocaine in a school zone to be served from and after a one-day sentence for distribution. That recommendation, to put it mildly, was not what the judge had in mind. He turned to the defendant and said, "[Y]ou had the gall to get up on the stand and basically perjure yourself. It just irritates me. After you've been caught

---

[1] Witnesses testified that No. 1 Fairland is in a connecting building two doors away from No. 5 Fairland.

red handed by a police officer you didn't even have enough integrity to stand and take whatever was deserved under the circumstances." There were other remarks which we need not detail that excoriated the defendant for dragging his mother into the case, insulting the integrity of the police officers, and forcing his trial counsel "to make a [silk] purse out of a sow's ear" by defending him. The judge then, without asking for any sentencing recommendation from trial counsel, imposed a sentence of two and one-half years (six months to serve, balance suspended) for distribution, and two and one-half years to be served on and after the previous six months for distribution in a school zone. This added a full year behind bars and an additional two years of probation after release to the prosecutor's suggested disposition.

Punishing a defendant for perceived perjury while offering testimony in defense of a criminal charge, as a ground of appeal, has been the subject of many decisions. See, e.g., *Commonwealth* v. *Gresek*, 390 Mass. 823, 829-832 (1984); *Commonwealth* v. *Juzba*, 46 Mass. App. Ct. 319, 324-325 (1999), and cases cited. "[A] trial judge may not consider a defendant's alleged perjury on the witness stand in determining the punishment to impose for a criminal conviction." *Commonwealth* v. *Coleman*, 390 Mass. 797, 806 (1984), citing *Commonwealth* v. *Murray*, 4 Mass. App. Ct. 493 (1976). *Coleman* also stated that "a prospective defendant's inclination to testify may be 'chill[ed]' due to a trial judge's imposition of a harsher penalty if he or she disbelieves the defense." *Commonwealth* v. *Coleman, supra* at 808, citing *Commonwealth* v. *Murray, supra* at 496-497.

In a trial that offered plenty of other targets for indignation, the judge chose poorly by stating at the sentencing hearing that the defendant had perjured himself. That conclusion is a "judgment by hunch" without a proper accusation, and deprives the accused of an opportunity to defend. *Commonwealth* v. *Murray, supra* at 496, quoting from *United States* v. *Moore*, 484 F.2d 1284, 1288 (4th Cir. 1973) (Craven, J., concurring). The fact of such perjury was neither proven at trial nor established in the record.

Among the reasons the Commonwealth offers to justify the disposition in this case is that the judge's decision was based, in part, on the defendant's recidivism. The judge had the defendant's criminal history before him prior to sentencing.

And the Commonwealth points out that the same judge sentenced both women who previously had pleaded guilty to the same offenses.[2] Compare *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 752 (1989), which held that "indicia of objective and legally acceptable sentencing criteria far outweigh[ed] the one indicator of vindictive sentencing, i.e., that the sentence imposed was greater than" that offered during plea negotiations. To say that some of the criteria utilized by the judge in this case were permissible does not, however, answer the question posed by this appeal. "[A] judge who determines a sentence, based *in part* on a defendant's alleged perjury during trial . . . creates a substantial risk of a miscarriage of justice." *Commonwealth* v. *Coleman, supra* at 808, 810 (emphasis added). See *Commonwealth* v. *Souza*, 390 Mass. 813 (1984) (substantial risk of a miscarriage of justice where judge took into consideration at sentencing defendant's alleged perjury on the stand). From the record of the sentencing hearing it is all too clear that the sentence was primarily punishment for the defendant's alleged false testimony at trial.

We therefore vacate the sentence imposed upon the defendant, and remand the case to the District Court for resentencing before another judge.

*So ordered.*

---

[2]This avails the Commonwealth nothing because the woman who was present with the defendant on February 13 was sentenced to two and one-half years in a house of correction, one year to serve, balance suspended for two years with probation. The other woman, whose apartment at No. 5 Fairland Street was searched and where both women were arrested in April, 1997, received a sentence of one day for distribution of cocaine and a two-year committed sentence in a house of correction for distribution of cocaine within a school zone. These sentences much more closely track the prosecutor's recommendation for the defendant than does the sentence the judge imposed on him.