NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JARED CHAND NARAYAN, *Appellant*.

No. 1 CA-CR 24-0280

FILED 04-10-2025

Appeal from the Superior Court in Maricopa County
No. CR2022-123256-001
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kristen Reller
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which
Presiding Judge Brian Y. Furuya and Judge Anni Hill Foster joined.

**B A I L E Y**, Judge:

¶1          Jared Chand Narayan appeals his conviction and sentence for sexual assault. He raises several evidentiary challenges to statements made by a police detective in a videotaped interview. He also challenges the superior court's apparent consideration of his untruthfulness as an aggravating circumstance at sentencing. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          We view the facts in the light most favorable to sustaining Narayan's conviction and resolve all reasonable inferences against him. *See State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).

¶3          One afternoon in June 2022, H.L. reported to police that Narayan, her ex-boyfriend, had sexually assaulted her earlier that day. H.L. also reported that Narayan had recorded a video of the assault without her consent. After Detective Gonzalez interviewed H.L. about the incident, H.L. submitted to an examination by a forensic nurse examiner. Narayan was taken into custody later that day, and Detective Gonzalez interviewed him that evening. When Detective Gonzalez questioned Narayan about a bite mark on his arm and a scratch on his face, Narayan insisted his dog caused those injuries. Without being prompted, Narayan also volunteered that his dog had broken his necklace.

¶4          A grand jury indicted Narayan for the following counts: count 1, kidnapping; count 2, aggravated assault; count 3, sexual abuse; count 4, sexual assault (oral contact with H.L.'s genitals); count 5, sexual assault (penile/vaginal penetration); and count 6, surreptitious recording. As jury voir dire commenced, Narayan pled guilty to count 6.

¶5          The parties stipulated to admitting into evidence the roughly three-hour video recording of Detective Gonzalez's interview with Narayan. Over an eight-day trial, the jury heard testimony from numerous witnesses, including H.L., the forensic nurse examiner, Detective Gonzalez, and Narayan. H.L. testified that she bit Narayan's arm, scratched his face, and broke his necklace while attempting to fight him off. She further testified that she "bucked" in an attempt to get Narayan off her, and Narayan strangled her to force her to comply. The forensic nurse examiner testified that H.L. displayed symptoms consistent with strangulation. During his testimony, Narayan admitted he lied about the cause of his injuries and broken necklace during his interview with Detective Gonzalez.

¶6            The jury found Narayan guilty of count 4 and acquitted him of the remaining counts.  The State alleged two aggravating factors as to count 4: (1) physical or emotional harm to the victim, and (2) infliction or threatened infliction of serious physical injury.  The jury found that neither aggravating factor was proven.

¶7            The court sentenced Narayan to the presumptive term of seven calendar (flat-time) years' imprisonment for count 4, with 62 days' presentence incarceration credit.  For count 6, the court ordered Narayan to serve three years' probation upon discharge from prison.

¶8            Narayan timely appealed his conviction and sentence for count 4.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

I.      Detective Gonzalez's Interview Statements

¶9            During her interview with Narayan, Detective Gonzalez made the following statements:

1.  "She's got significant injuries to her body that are fresh and new, that happened recently.  Like sometime today, recently."

2.  "So, here's the deal.  Like, she's got a pretty good story.  And she's got injuries that are consistent with her story."

3.  "And sometimes, somebody might not be aware that its [consent] changed, or sometimes, they believe that they're entitled because its [sexual intercourse] already started, or because there's an exchange of money, they feel like they are entitled to the product that they've purchased.  Now, I'm not saying that any of those things happened today, but . . . I think there's more to the story than you're telling me."

4.  "And, I know that when a judge looks at whether or not there's probable cause that a crime occurred, the forthcomingness of the people that are doing the talking is one of the main things that they look at."

5.  "I just feel like that there has to be more to this story, and that, why would she come up with all these things?  What does she stand to

benefit?  You've already given her the money.[1]  Well, let me tell you, her day has not been a can of peaches.  She's had a very invasive, very personal medical exam.  That's traumatizing in and of itself."

6.  "Based on her level of how upset she was, how injured she was, and how broken she was when we were talking, I don't have any doubt in my mind that something happened."

7.  "Right now, I can't go to anybody and say, I feel like he's giving me the whole story, because there's just too many unexplained injuries."

8.  "If she was gonna ruin your life, she's had years to do it."

9.  "What I'm implying is that you have a human bite mark on your arm, and she said she bit you to try and get away from you.  You have a scratch on your face.  She said she was scratching at your face to try and get you off of her.  Your necklace is broken.  She said she broke it in the struggle.  She has evidence of being strangled, like she says happened.  She has bruises all over her back.  It's just adding up."

10. "I wish that I could believe you . . . I want to be able to say that you're being open and honest.  And I want to be able to say that you're telling the truth.  But there's just so much that's adding up."

11. "And then at the very least, you are under arrest for aggravated assault, which is for the strangulation.  Okay.  So, we have physical evidence that that happened and that corroborates the story that she said."

12. "She talked about it being a little bit violent."

13. "She said that you put her in a chokehold, and you were preventing her from breathing.  And she's got the evidence on her body that shows that that physically happened to her."

14. "She said that she broke your necklace."

¶10          Narayan raises several evidentiary challenges to these statements for the first time on appeal.  Because Narayan did not object at

---

[1] Here, Detective Gonzalez was referring to Narayan's payment to H.L. to finalize their division of previously shared furniture.

trial, he has waived any objection absent a showing of fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005).

**¶11** Narayan argues that statements (1)–(11) constituted improper prosecutorial vouching. Prosecutorial vouching can occur when the prosecutor "places the prestige of the government behind its witness," or "suggests that information not presented to the jury supports the witness's testimony." *State v. Johnson*, 247 Ariz. 166, 204, ¶ 157 (2019) (citations omitted). "While improper vouching must generally come from the prosecutor's own mouth, a prosecutor's solicitation of assertions of trustworthiness from government witnesses may also be impermissible vouching." *United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993) (citation omitted). A law enforcement officer's statements concerning the credibility of another witness, however, do not constitute prosecutorial vouching. *See State v. Martinez*, 230 Ariz. 382, 385, ¶ 10 n.4 (App. 2012) ("Martinez has not cited, and we have not found, any cases to support this contention."). Here, Detective Gonzalez's statements (1)–(11) commented on H.L.'s and Narayan's truthfulness, but they were not an "assertion of trustworthiness" as to her own credibility as a government witness. *See Lewis*, 10 F.3d at 1089. No prosecutorial vouching occurred as a result of these statements.[2]

**¶12** Narayan also argues the admission of Detective Gonzalez's statements (1)–(11) violated Arizona Rule of Evidence ("Rule") 403. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, Detective Gonzalez's statements were probative because they contextualized Narayan's responses. *See State v. Escalante-Orozco*, 241 Ariz. 254, 279–80, ¶¶ 88–89 (2017) (upholding the admission of a detective's interview transcript to provide context for the defendant's answers), *abrogated in part by State v. Escalante*, 245 Ariz. 135, 140–41, ¶¶ 15–16 (2018). And the statements were not unduly prejudicial because they merely parroted facts the jury had been presented from other evidence. *See, e.g.*, *State v. Gulbrandson*, 184 Ariz. 46, 61 (1995) ("Evidence is unfairly prejudicial only if it has an undue tendency to suggest a decision

---

[2] In *Martinez*, we analyzed whether the law enforcement officer's testimony impermissibly commented on another witness's truthfulness or credibility. 230 Ariz. at 385, ¶¶ 10–11. Although we could similarly analyze whether Detective Gonzalez's statements impermissibly commented on H.L.'s or Narayan's credibility, we decline to do so because Narayan's reply brief asks us to focus only on the issue of prosecutorial vouching.

on an improper basis, such as emotion, sympathy, or horror." (citation omitted)). Namely, the jury learned about the nature and extent of H.L.'s injuries from H.L.'s and the forensic nurse examiner's testimony, and it learned from Narayan's testimony that he had lied during his interview. We discern no error, much less fundamental error.

¶13        Narayan further argues Detective Gonzalez's statements (9) and (12)–(14) were inadmissible hearsay.[3] "Out of court statements offered to prove the truth of the matter asserted are hearsay and are inadmissible unless they fall within an exception to the hearsay rule." *State v. Payne*, 233 Ariz. 484, 502, ¶ 49 (2013) (citing Ariz. R. Evid. 801(c)–(d), 802). Even assuming the statements were hearsay not within any exception to the hearsay rule, Narayan has not carried his burden to establish he was prejudiced. Statements (9) and (12)–(14) reiterated facts the jury knew from H.L.'s non-hearsay testimony, and Narayan has not shown the jury "could have plausibly and intelligently returned a different verdict" had these statements been excluded. *State v. Thompson*, 252 Ariz. 279, 293–94, ¶ 46 (2022) (quoting *Escalante*, 245 Ariz. at 144, ¶ 31).

II.      Consideration of Narayan's Untruthfulness at Sentencing

¶14        At sentencing, the superior court found there were mitigating circumstances of family support and absence of criminal history for counts 4 and 6. For count 6, the court found acceptance of responsibility as an additional mitigating factor but also considered harm to the victim as an aggravating factor.

¶15        The court then stated:

> The Court has also considered the testimony at trial, and frankly, Mr. Narayan, the Court didn't believe a word that came out of your mouth, not one — except maybe your name. Your demeanor both with the detective and testifying was exactly the same, which told me you lied right — well, we all know you lied right through your interview with police because you admitted to most of it.
>
> And you have a really good lawyer. And I am sure he pointed out to you that the bite mark on your arm and the fact

---

[3] Although Narayan's opening brief contends "many of Detective Gonzalez's recorded statements contained hearsay because she was repeating what [H.L.] told her," Narayan only identifies statements (9) and (12)–(14). We accordingly limit our hearsay analysis to those statements.

that the video that you tried to hide by cutting it was going to come out anyway. You had to fit your new story to—around the facts. . . .

The Court's considered the mitigation, but does find that the presumptive term is appropriate.

¶16 Narayan argues the court apparently considered his untruthfulness as an aggravating factor for count 4, and that such consideration was error. Because Narayan did not object at sentencing, we ask whether the court's apparent consideration of his untruthfulness as an aggravating factor constituted fundamental, prejudicial error. *See State v. McDonagh*, 232 Ariz. 247, 248, ¶ 7 (App. 2013).

¶17 "Under Arizona's noncapital sentencing statutes, the maximum punishment authorized by a jury verdict alone, without the finding of any additional facts, is the presumptive term." *State v. Johnson*, 210 Ariz. 438, 441, ¶ 10 (App. 2005) (citations omitted). The superior court may consider an aggravating circumstance not found by the jury, provided it does not rely on that circumstance to increase the punishment beyond the maximum authorized by the jury verdict. *See id.* at 442, ¶ 13. The court may properly consider the defendant's untruthfulness as an aggravating circumstance. *See State v. McDonald*, 156 Ariz. 260, 263–64 (App. 1987) (allowing the superior court to consider what it perceived to be false testimony by the defendant as an aggravating circumstance for sentencing purposes).

¶18 Here, because the superior court's sentence on count 4 did not exceed the presumptive term, the court did not err even assuming it considered Narayan's untruthfulness as an aggravating circumstance.

**CONCLUSION**

¶19 We affirm.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:           JR

7